WILLIAM EDDY *et al. vs.* DANIEL L. D. GRANGER, City Treasurer of the City of Providence.

A municipality cannot confer a private right in the use of a public street inconsistent with its duty to secure the use of the streets for the public benefit.

Permission from a municipality to use a public street for a private drain is at most a revocable license, and cannot create a vested right to maintain the drain.

Hence, when a city, in building a sewer as part of its sewerage system, cut off a private drain which had been laid in a street by permission of the town before its incorporation as a city, and the water and sewage which had flowed through the drain were in consequence thrown back on the premises of the plaintiffs,

*Held*, that an action would not lie against the city for cutting off the drain and neglecting to provide for the drainage which had previously flowed through it.

TRESPASS ON THE CASE for negligence. Certified from the Common Pleas Division on demurrer to the declaration.

*May* 3, 1895. STINESS, J. The declaration charges that the city of Providence negligently caused a sewer to be built in South Main Street, as a part of the sewerage system of the city, which cut off a drain leading from the premises of the plaintiffs and others, through Harding's Alley, an accepted street, to the river, said drain having been laid by permission of the town of Providence; whereby the said drain was obstructed and water and sewage from estates above flowed back on to the plaintiffs' premises. Upon demurrer to the declaration the question is whether there is any legal liability on the part of the city for cutting off the drain.

While the primary purposes of streets are for public travel, requiring only a use of the surface, yet, by immemorial custom, they have been put to other uses of a public nature quite distinct from but not incompatible with their use as

highways. Thus, gas and water pipes, drains and electric wires, as well as other things of general convenience, by common consent find a place in our public streets. In *Clark* v. *Peckham*, 9 R. I. 455, it is said that there is an implied power in the city to build drains and that the streets are dedicated to such necessary uses. Obviously all such constructions must be under municipal direction and control and so, before a system of water supply and drainage was adopted, permission was granted to private parties from time to time to lay pipes from fountains and to build drains in many of the streets, of which the permission alleged in the declaration is an instance. But in granting such permission the municipality could not relinquish its control, nor confer any private rights inconsistent with its duty to secure the use of the highways for the public benefit. The permission was necessarily subject to the developing requirements of the city and so amounted only to a license to use the street, which, from its nature, could be revoked. Otherwise the existence of private drains might prevent the building of sewers altogether.

But while the plaintiffs do not deny the right of the city to remove the private drain and to build a sewer in its place, they claim that the city was bound in so doing to provide for the drainage which had flowed through the private drain and was negligent because it did not do so. Such a claim must rest upon a vested right to maintain the drain or else it has no foundation in an action for damages. We think that neither the town nor the city had the power to convey such a right to private parties. The most it could do would be to grant a license to use the street in a way which should not interfere with the public interest. If the plaintiffs had no vested right in the street, then they cannot legally complain because the city did not protect them in the use of it. In *Baxter* v. *Tripp*, 11 R. I. 310, it is said : " The argument is that the city had no right to deprive the plaintiffs of the aqueduct without supplying its place with a sewer which could be used as safely and as well. If we were trying this case in a court of conscience, the argument would perhaps be valid." We do not see, however, that the plaintiffs' claim

could be maintained even in a court of conscience. The fact that they were allowed for many years to carry their house drainage to the river, instead of being obliged, as most other people were, to provide for it in cesspools on their own land, had been to their advantage during that time. But how can this fact impose a moral duty on the city to continue a favor which had become inconsistent with public necessity? We are unable to see that there was either a moral or legal obligation on the part of the city to maintain the private drain, although the latter is the only question with which we have to deal. Authorities on this point are not numerous but we find that such a conclusion is strongly supported in *Elster* v. *Springfield*, 49 Ohio St. 82. The court says: "The city as to its streets is a trustee for the use of the public. A trustee of property for the benefit of the public could not, any more than could a trustee of private property held for known specific and continuing uses, alien or encumber the property to the prejudice of the beneficiary, and a person dealing with the trustee, in either case, would be bound to take notice, at his peril, of the limitation of the power. 2 Dillon on Munic. Corp. § 671; *Alton* v. *Trans. Co.*, 15 Ill. 60. Hence it would follow that whatever grant may have been made by the town of Springfield to the Kills, to maintain water pipes in Center Street, could have no greater operation than a temporary license, subject to be revoked at the will of the town or city, as its necessities in the future uses of the street might require. It necessarily results from this that the enjoyment of the street beneath the surface for the laying of the pipes and the flowing of the water through them was a permissive use, and that no permanent right could be acquired by long continuance." Having the right, therefore, to cut off the private drain without any obligation to provide for the sewage, it is clear that there is no cause of action against the city, for this act, which is all that is charged in the declaration.

Suggestion was made at the hearing that there was no notice to the plaintiffs of the cutting off of the drain and that as licensees they were entitled to notice, but as no such allegation is made in the declaration, we do not pass upon

the question whether there would be any liability on the part of the city, if such were the fact.

The demurrer to the declaration is sustained.

. *Charles M. Salisbury*, for plaintiffs.

*Francis Colwell, City Solicitor, & Albert A. Baker*, Assistant City Solicitor, for defendant.