W. R. LACY ET AL., Appellants, v. THE CITY OF OSKA-LOOSA ET AL., Appellees.

**Municipal corporations:** CONTROL OF STREETS: STATUTES. A city is vested by statute with the exclusive care and control of its streets, and is required to keep them open, in repair and free from nuisance. It may establish a market place and regulate its use, but cannot charge for standing teams therein or in the streets adjacent thereto. Such powers are legislative and plenary, and courts will only interfere to see that they are exercised reasonably.

**Same:** POWER OF CITY: JUDICIAL REVIEW. The wisdom of a legislative act is not a matter for judicial review: nor will the courts inquire into the necessity for a change or improvement in a public street ordered by the city.

**Same:** STREETS: OBSTRUCTION. A street is primarily a public way, and while a city is under no mandatory obligation to open up or improve the same, still where it has undertaken to do so it must keep it unobstructed and unincumbered by the unauthorized act of private persons.

**Same:** OBSTRUCTIONS: RIGHT OF REMOVAL. Neither the limited extent of an obstruction; nor the fact that there is ample room for the passage of teams and travelers; nor that the obstruction is a thing of public convenience, will affect the right of the city to remove it.

**Same:** PRIVATE USE OF STREETS: POWER OF CITY. A city has no power to grant any individual the right to permanently occupy any portion of a street with a structure or device for private use or profit.

**Same:** STREET OBSTRUCTIONS: LICENSE: REVOCATION. One who has been granted the right to occupy a portion of a public street for a private purpose must take notice that the city cannot be bound thereby, but may revoke such license at any time. As in this case a resolution of the council permitting the erection of hitching posts around a public square, conferred on the petitioners a mere license, revocation of which after many years was not a wrong for which there is either a legal or equitable remedy.

**Same:** ADVERSE POSSESSION.  A license by the city to occupy a portion of the public street for a private purpose will not ripen into title as against the public by mere lapse of time or long continued assertion.

**Private use of street:** POWER OF CITY.  Permission to occupy a portion of a street for private purposes will be held to have been accepted with knowledge that the city has no power to grant a permanent right of that character.

**Streets:** REMOVAL OF OBSTRUCTIONS.  To justify an order of removal a street obstruction need not necessarily have become unclean or offensive to the senses, or in fact an interference with public travel along the improved path.  Thus a city may order the removal of hitching posts from one of its business streets, although the same are not offensive and are not in the street, but on the line between the street and a public park.

**Town plats:** PUBLIC PARK: TITLE BY DEDICATION.  The filing of a town plat containing a tract designated a public square, followed by its occupation, use and improvement as a park, constitutes a complete dedication and the title thereto passes to the city as fully as the title to the streets designated on the same plat.

*Appeal from Mahaska District Court.*—HON. W. G. CLEMENTS, Judge.

WEDNESDAY, JUNE 2, 1909.

REHEARING DENIED TUESDAY, SEPTEMBER 28, 1909.

ACTION in equity to restrain the defendant city and its officers from removing certain hitching posts or racks which have been planted and maintained along the street lines bordering a public park.  The petition was by the district court dismissed, and plaintiffs appeal.—*Affirmed.*

*Burrill & Devitt* and *J. F. & W. R. Lacey,* for appellants.

*C. C. Orvis* and *J. C. Williams,* for appellees.

WEAVER, J.—The site of the town of Oskaloosa was

platted in the year 1844 by the commissioners of Mahaska County, who for that purpose made entry of the land, which was then a part of the public domain. The town was incorporated in the year 1853 and is now a city of about 12,000 inhabitants. Near the center of the tract there was platted a block of land designated as a "public square." This square constitutes a rectangle measuring two hundred and fifty-six and one-half feet on each side and is bounded by public streets each eighty feet in width. The county courthouse faces the square from the opposite side of one of the adjacent streets, and the remainder of the immediate neighborhood includes many of the principal business places of the city. Within recent years the streets about the square have been paved, and three of the streets are occupied by car tracks. The square itself has been improved and ornamented with trees, walks, seats and other accessories commonly provided in public parks. At an early date the park was inclosed by a fence of primitive pattern, which was used to a greater or less degree as a hitching place for the horses of farmers and others visiting or trading at the neighboring shops and stores. Hitching posts and racks were also provided from time to time and very generally used. In the year 1885, on petition of certain citizens, the city council granted them leave to "erect hitching racks around the public square without expense to the city." On one occasion, witnesses say probably in 1885 or earlier, the racks were removed "surreptitiously," but leave was obtained from the city authorities to restore them, and they have since been maintained by private subscription and at considerable expense. The posts were set as near as practicable on the line between the street and the square. The sidewalks are laid wholly upon the park side of the line, and the street paving extends beyond the line of posts and forms a gutter between that line and the sidewalk. Teams hitched to the rack stand wholly within the street. The racks have been con-

tinually used for their intended purpose, and on many days the hitching room thus afforded is entirely filled. During the winter season twenty-four to thirty-nine loads of manure and other rubbish and waste accumulate where teams are allowed to stand, but during the summer the streets are cleaned with reasonable frequency. The streets about the square have been used to some extent as a market place, though they have never been set apart for that purpose by action of the city council. The plaintiffs, or some of them have contributed to the planting and maintenance of the posts and racks, and all of them are property owners and business men whose shops and stores are in the immediate vicinity, and they have found, or claim to have found, that said racks and the convenience thereby afforded to the public add value to their property and business. On March 11, 1907, the city council ordered the racks removed and re-erected at another location several blocks distant, and thereupon this action was instituted to restrain the execution of such order. At the date of the order, the city of Oskaloosa had not taken advantage of the statute allowing it to elect a board of park commissioners, and the control of its public parks as well as of its streets was then vested in the city council. On the following day, however, the council provided for the election of such commissioners at the ensuing municipal election, and the board thus chosen and their successors in office have since exercised the powers granted by the statute. Code Supplement 1907, title 5, chapter 9.

Plaintiff's petition sets out with much particularity the municipal history of Oskaloosa with reference to the establishment, maintenance, and use of the hitching racks, alleges that in platting the city the county commissioners intended to dedicate the square and surrounding streets as a place to be used for hitching teams, and that the dedication and use of the property for that purpose for more than sixty years can not now be lawfully interfered with by

the city. It avers that the maintenance and use of said racks does not constitute any nuisance, nor are they in any manner an obstruction to the use of the streets, but are a matter of great public convenience. Wherefore it is demanded that the city be permanently enjoined from removing or destroying the racks or changing the location thereof. Answering the petition the defendants admit their intention to remove the racks, allege their right to do so under the statute and by virtue of the police power vested in the city, and deny the plaintiffs' claims generally. Upon hearing the testimony offered, 'the trial court found for the defendants, dismissed the bill, and the plaintiffs appeal.

By statute the control and care of the streets are vested exclusively in the city, and it is made its duty to see that they are kept open and in repair and free from

1. MUNICIPAL CORPORATIONS: control of streets: statutes.

nuisances. Code, section 753. They have power to provide market places and regulate the use thereof, but may not levy any toll or charge for the standing of teams and vehicles in such places or in the streets adjacent thereto on market days and evenings previous thereto. Code, sections 717 and 751. The powers thus conferred are legislative in character, and within the limits prescribed by statute are plenary. The only limit upon them which the courts have been inclined to recognize is that they shall not be·exercised unreasonably.

The wisdom of a legislative act is not a matter for judicial consideration or review, nor will the courts inquire into the necessity of a change or improvement in a public

2. SAME: power of city: judicial review.

street ordered in due form by municipal authority. *Miller v. Webster City*, 94 Iowa, 162; *Cherokee v. Town Lot Co.,* 52 Iowa, 279; *Dunham v. Hyde Park*, 75 Ill. 371; *Greencastle v. Hazelett*, 23 Ind. 186; *Brewster v. Davenport*, 51 Iowa, 427; *Seward v. Rheiner*, 2 Kan. App. 95 (43 Pac. 423);

*Church v. Baltimore,* 6 Gill (Md.) 391 (48 Am. Dec. 540). The statute provides that the obstructing or incumbering of public roads by buildings, fences, or otherwise is a nuisance (Code, section 5078); and, as we have already seen, cities are charged with the duty of keeping the streets free therefrom.

The primary use or purpose for which streets are established is to afford the public a way of passage or travel, and, while the city is not under mandatory obligation to

3. SAME: streets: obstruction.

open up and improve streets by the removal of natural obstructions which render them impassable, whenever it does open and improve them, it must take care that these ways are not obstructed or incumbered by the unauthorized act of any person or persons. A "street" is a public way from side to side and from end to end, and any private use thereof which in any degree detracts from, hinders, or prevents its free use as a public way to its full extent is within the meaning of the law an obstruction or incumbrance. See *Quinn v. Baage,* 138 Iowa, 426, and cases there cited.

The limited extent of the obstruction is immaterial as affecting the right of the city to remove it. The fact that, notwithstanding the obstruction, there is still ample

4. SAME: obstructions: right of removal.

room left for passage of teams and travelers, will not exempt it from liability to removal whenever ordered by the proper municipal authority. *Quinn v. Baage, supra; Philbrick v. University Place,* 88 Iowa, 354; *Patterson v. Vail,* 43 Iowa, 143. Nor is it any defense to such order that the obstruction is in fact a thing of public convenience or benefit. *Emerson v. Babcock,* 66 Iowa, 257; *State v. Kaster,* 35 Iowa, 221.

The city has no power or authority to grant any individual or any number of individuals the right to permanently occupy any part of a street with any structure or device for their private use, convenience, or profit. It

may vacate a street, but it can not authorize its perversion

to other or private uses so long as it re-
mains a street. For example, it has been
held, in the absence of statute granting such
authority, that a city can not lawfully permit a street to
be incumbered by a hack stand. *Branahan v. Hotel Co.,*
39 Ohio St. 333 (48 Am. Rep. 457). Platform scales for
the convenience of the business of an abutting owner may
be ordered removed. *Emerson v. Babcock,* 66 Iowa, 257.
In deciding the case just cited, we said: "The fee title
of the streets is in the town, and no private person has any
legal right to erect any structure therein for the purpose
of carrying on his private business, and if, having done so,
he is required to remove his building or structure, or what-
ever it may be, from the street, he has no cause of com-
plaint. He is deprived of no right. If the plaintiff was
permitted to maintain his scales in the street for a time,
the privilege must be regarded as a mere license, which
may be terminated at any time, and it is immaterial
whether the erection in the street amounts to a nuisance.
It is the duty of the town to keep the streets clear and un-
obstructed, and no person has the right to take and hold
possession of any part of the streets for any private pur-
pose." Without statutory authority even buildings in-
tended for public use or convenience may not be lawfully
erected or established upon a public street, as, for example,
a town hall (*Pettit v. Grand Junction,* 119 Iowa, 352),
or a market (*Columbus v. Jaques,* 30 Ga. 506; *Schopp v.
St. Louis,* 117 Mo. 131 (22 S. W. 898, 20 L. R. A. 783).

5. SAME: private use of streets: power of city.

One contracting with a city for the right to maintain
a well in a public street is bound to take notice that the
municipality can not bind itself by such con-
tract and may revoke it at any time. *Sny-
der v. Mt. Pulaski,* 176 Ill. 397 (52 N. E.
62, 44 L. R. A. 407). A private drain
placed under the street with the consent of the city may be

6. SAME: street obstructions: license: revocation.

removed whenever in the judgment of the council it is
proper so to do. A grant or passive permission, however
long continued, confers no right upon the beneficiary which
may not be withdrawn. *Eddy v. Granger,* 19 R. I. 105
(31 Atl. 831, 28 L. R. A. 517). A permission by the
city to place awnings extending over a sidewalk and sup-
ported by posts gives no permanent right to maintain them.
*Hibbard v. Chicago,* 173 Ill. 91 (50 N. E. 256, 40 L.
R. A. 621). In the cited case the court says:

> The public streets of a city are dedicated to public
> use and are subject to the control and management of the
> city council; but that body has no power to alien or other-
> wise incumber such streets so long as they are public
> streets, but must hold them in trust for public uses only.
> The municipal corporation can grant no easement or right
> therein not of a public nature, and the entire street must
> be maintained for public use. . . . A permanent en-
> croachment upon a public street for a private purpose is
> a purpresture and is in law a nuisance. . . . Where
> the city has authorized a temporary use which causes a
> temporary obstruction, one having been authorized to ex-
> ercise such temporary use would not be liable for a penalty
> under the ordinances for obstructing the street as it was
> permitted as a matter of grace or favor. That such per-
> mission was given may be implied from circumstances; but,
> when the city demands the removal of such structure, it,
> if permitted to remain thereafter, becomes a nuisance.

In *Hobart v. Railroad Co.,* 27 Wis. 194 (9 Am. Rep.
461), the plaintiff was a wholesale merchant who received
and sent out large quantities of goods from his store, and
for many years his teamsters had been accustomed to back
their drays up to the sidewalk in front of the premises for
the purpose of loading and unloading their freight. A
street railway company was about to lay its track along
the street, leaving the space between the same and the
sidewalk so narrow as to interfere with this convenience
to the plaintiff's store and business, and plaintiff sought

to enjoin the company from such interference.   Denying
the alleged right of action, the court says:

> The public authorities may permit such use of the
> street so long as they please, or until public convenience
> demands that it should cease; but the plaintiff can not
> insist upon it as a right in himself.   When the space thus
> occupied by his teams is required for public travel or the
> passage of vehicles of any kind authorized by the public,
> his occupation becomes an obstruction and a nuisance, and
> he must turn his teams the other way, which may be done
> without any very great additional trouble or inconvenience
> to him.   At all events he has no right to insist upon such
> use and occupancy of the street when the public authori-
> ties have signified their unwillingness, as they have done
> by the laying down of the railway track.

The Massachusetts court holds that the obstruction
of any portion of a public road is a nuisance at common
law, and says: "The general easement in the public ac-
quired by the location of a highway is coextensive with
the exterior limits of the located highway, and the ques-
tion of nuisance or no nuisance does not depend upon the
fact whether that part of the highway which is alleged to
have been unlawfully entered upon and obstructed by the
defendant was a portion of the highway capable of being
used by the traveler." *Commonwealth v. King,* 54 Mass.
115.   The privilege of displaying showboards, placards, and
signs upon the sidewalks of a populous city may be of great
value to merchants and dealers, but the city has power to
prohibit it.   *Commonwealth v. McCafferty,* 145 Mass. 384
(14 N. E. 451).

This citation of cases illustrating the completeness of
the city's control over its streets could be multiplied in-
definitely, but those to which we have referred sufficiently
indicate the unvarying trend of judicial decisions.   It is
too clear to justify further argument that the resolution
passed in 1885 by the city council permitting the erection

of hitching posts along the street lines about the public square conferred upon the petitioners therefor a mere license, and that the revocation of such license after more than twenty years' use was not a wrong for which either law or equity affords any remedy. The right to continue these posts, while shown to be a convenience to such members of the general public as desire to avail themselves of their use, is not sought to be sustained as a public right, but as a private right of those who own property or do business in the immediate vicinity of the public square. It may be true that the location of the posts and racks promotes the trade in this locality, and thus indirectly enhances the value of property to the material advantage of the appellants; but that is not in itself a matter of material consideration. It would perhaps be a source of profit if these merchants and dealers were alowed to convert the sidewalk space in front of their premises into an arcade in which to meet their customers and to display and sell their goods; but no order, resolution, or ordinance of the council could deprive the city of its power to revoke a privilege so granted.

The claim made in pleading and in argument that the right to maintain hitching posts at this location was in some way annexed to or made a condition of the dedication of the plat of the town is wholly without 7. SAME: adverse possession. out support in the record. No such suggestion appears in any writing, deed, or plat connected with the dedication. Indeed, it is more than doubtful that such reserved right to incumber the street or to exempt it from the full and complete control which the statute gives to the municipality over streets in general would be of any force and validity. A public street, to the incumbrance of which any person may set up a defensible claim of right, is an anomaly unknown to the statute or to the common law. A way to which any such condition or limitation is attached is not a public highway. It fol-

lows of necessity that such a claim of right can not ripen into title as against the public by mere lapse of time or long-continued assertion. True we have often held, and still adhere to the doctrine, that total abandonment of a street by the public for a long period of time may under some circumstances work an entire loss of its character as a public way. See *Weber v. Iowa City,* 119 Iowa, 633, and cases there quoted.

So, too, long-continued recognition of a given line or boundary may under some circumstances estop the city to insist upon some other line as the one fixed by the original dedication; but we have yet to find any precedent for the proposition that, so long as a traveled way remains a recognized public street, any leave or permission or license to subject any portion of it to private use may become irrevocable by mere lapse of time.

The cities of this country are a growth of modern times. In the earlier and more primitive stages of their history, their streets and parks have been subjected to uses more or less inconsistent with exclusive public rights therein; but the conditions then prevailing did not call for a strict exercise of municipal regulation and control. Such uses were permissive only and subject to prohibition by the city whenever in the judgment of its governing body, the council, the advancing growth and development of the community required it. The testimony of a prominent lawyer, given in support of the appellant's claim in this case, affords a good illustration of the changes wrought in a single lifetime. In reciting his personal observation of the uses to which streets and the public square were put in the early days of Oskaloosa, he tells the court that his memory goes back to the year 1854, when he skated upon the public square in the winter, and with his dog dug squirrels from its soil in the summer. Doubtless, also, he could have then picketed his horse in the square or turned his cow loose upon the streets without exciting adverse com-

ment; but, if the same witness should now relapse into
the mood of his youth and attempt a revival of his ancient
pastimes and practices upon the field of his earlier exploits,
he would hardly expect, when called before the mayor, to
defend his action by the plea of prescriptive right to do
so. A place which was convenient and proper for the hitch-
ing of teams ten, twenty or thirty years ago may cease to
be such by the growth of the city or the course of public
improvements. The judgment and discretion to control
these things must be vested somewhere, and in the wisdom
of the Legislature it has been conferred upon the city
council. This fact, and the fact that the maintenance of
hitching places in the streets is at best a mere license,
were clearly recognized by the appellants themselves when
with others they applied to the council in 1885 for permis-
sion to erect those now in controversy.

A permission to occupy or incumber a street for private
purposes must be considered as having been accepted with
full knowledge that the city is without power to confer a
permanent right or privilege of that nature.

8. PRIVATE USE
OF STREET:
power of city.

Says the Illinois court: "The municipality
having no power to grant such permanent
use, there can be no estoppel against it from requiring the
street to be open in its entirety, because no estoppel can
arise from an act of the municipal authorities done without
authority of law." *Snyder v. Mt. Pulaski,* 176 Ill. 397
(52 N. E. 62, 44 L. R. A. 407).

Counsel argue with much earnestness that, before the
city council may lawfully order the removal, it must first
find that the hitching racks are a nuisance, and this it is

9. STREETS: re-
moval of ob-
structions.

said has been negatived by proof that the
street at this location is kept reasonably
clean, and by the further fact that the racks
are not in fact in the street. At this point it is well to
repeat, by way of emphasis, what we have already indi-
cated, that to be subject to removal as a nuisance at the

order of the city council an obstruction need not necessarily be unclean or offensive to the senses and need not in fact prevent or interfere with public travel along the trodden or improved path. It is the right of the city to insist that the street shall be kept clear for public use and passage throughout its entire width, and, if in the judgment of the city council hitching posts should be removed from its busier and more crowded streets, the court can not assume to say that the order is unreasonable and void. Nor is it any answer to say that these posts are set, not in the street, but upon the dividing line between the street and park. The same statute which grants to cities the power to control their streets gives also in like terms power to control all public grounds. Code, sections 751, 753. And the conditions which render it reasonable and proper to prohibit the planting of hitching posts in an ornamental public park are manifestly even more persuasive than those calling for such action with reference to a public street.

Moreover, hitching posts planted upon the line of the street contemplate the standing of teams and vehicles wholly within the public way, and these posts, being constantly in use, have the effect to exclude public travel from the public street—a strip some twenty to thirty feet wide—during all the business hours of the day. Surely, if this is not a matter concerning which the city may exercise a power of regulation and control, the authority given by the statutes is restricted within very narrow limits. To say nothing of this encroachment upon or incumbrance of the street itself, we see no reason to deny the city the authority to remove the posts and the cordon of horses which surround the park as being for the benefit and attractiveness of the place as a public pleasure ground.

The power and jurisdiction of the board of park commissioners is not involved in this controversy, for, as above noted, the order for the removal of the posts was made before the board was called into existence, and at a time when

the jurisdiction of the council was beyond question. Indeed, were the board here asserting any authority as opposed to the city council, it would be difficult to find any argument for the proposition that it could authorize the maintenance of a standing invitation to the drivers and owners of horses to obstruct the streets which surround the square as against the order of the council prohibiting such obstruction.

The radical weakness of the appellants' case is quite strikingly revealed in their closing argument, where they especially object to that part of the council's order which not only directs the removal of the racks about the public square, but establishes a new location for such conveniences "at Market Place and the City Fire Department." This, counsel say, was done in order to put the hitching place "near the property and business of other business men who had come to the city at the eleventh hour and wanted to reap where they had not sown." The court must beg leave to assume that it is not yet near eleven o'clock in the history of Oskaloosa, and that the prosperity and growth by which it has expanded beyond the immediate, surroundings of the original public square, until the regions roundabout Market Place and the City Fire Department lift up their ambitious heads in rivalry with their elder neighbors, will long continue to characterize that thriving municipality. In such event the time is doubtless not far distant when the course of municipal improvements will compel the hitch racks to move on to some remoter location, and both parties to this controversy may then cordially unite in denouncing the council for its favoritism to a still later generation of business men. Interpreted in the light of the argument here referred to, appellants' demand is that the public street should be subjected to their private use in a manner to give them an alleged advantage over property owners and business men located in other portions of the city. Doubtless there are other parties promoting the establishment of

another hitching place on the theory that it will inure to their own benefit. If these considerations are allowed to control or influence the official acts of the council, it will mean a paralyzation of all municipal improvement, for, generally speaking, no public work can be undertaken which is not of more advantage to some property than it is to others.

A claim is made in argument that the title to the public square is still in the county commissioners, who acted as a medium through which the dedication of the

10. TOWN PLATS: public parks: title by dedication.

land as a town plat was effected. This suggestion can hardly be made with much confidence. The filing of the plat containing the tract marked "public square," followed by its occupation, use and improvement as a park, constituted a complete dedication, and the title of the city thereto is as complete as its title to the streets designated upon the same plat. The title never vested in the commissioners, but in the public, and, when the community incorporated itself, the title inured to the municipality in trust for public use. *Scott v. Des Moines,* 64 Iowa, 438; *Livermore v. Maquoketa,* 35 Iowa, 358.

Of the many cases cited in appellant's brief, we find none which is in any manner inconsistent with our conclusion that no action is maintainable to prevent the city in the exercise of its governmental powers from clearing the street and park of the posts and racks, unless such precedent may be found in *Frederick County v. Winchester,* 84 Va. 467 (4 S. E. 844), decided by the Supreme Court of Virginia, which seems to hold that, under the peculiar circumstances attendant upon the founding of the city of Winchester in the eighteenth century, and subsequent public use of a certain courthouse square as a standing place for teams and vehicles, a dedication for that purpose could properly be inferred. The variance in circumstances and in the statutes of the respective states, to say nothing of

the pardonable pride of Thomas Jefferson's neighbors in relieving that great man from any possible charge of wrong-doing in tying his horse to a roadside fence while he walked to his inauguration as President of the United States, sufficiently differentiate that case from the one now in hand. We find nothing in it which is necessarily opposed to the rules of law established by a long and unbroken line of precedents, observance of which in our opinion compels an affirmance of the judgment below.

We find no reason for disturbing the conclusion of the district Court, and it is therefore *affirmed*.