J. W. SMITH, Appellee, v. CITY OF JEFFERSON, ET AL.,
Appellants.

**Municipal Corporations:** NUISANCE: HITCHING RACKS. Hitching racks
1  for horses in a public street are not a nuisance *per se,* but the
accumulation of unusual quantities of offal about the same, from
which offensive odors arise, constitute a nuisance which a property
owner may enjoin.

**Same:** NUISANCE: ABATEMENT. A property owner can only require the
2  removal of hitching posts in a public street adjacent to his property,
not in themselves a nuisance, when they interfere with the reasonable
use of the street in connection with his property.

**Same:** NUISANCE: LACHES: ESTOPPEL: EVIDENCE. Mere delay in
3  bringing suit to restrain a continuing nuisance is not necessarily
such laches or acquiesence as will constitute an estoppel. In this
action plaintiffs delay in bringing suit to remove hitching racks
adjacent to his premises was not such as to bar his right to relief.

**Same:** NUISANCE: PUBLIC AND PRIVATE: RIGHTS OF INDIVIDUAL. A
4  nuisance may be both public and private. So that where a city
maintained hitching posts, the use of which not only constituted a
public nuisance but were also injurious to the property of an
adjacent owner and the use to which the same was devoted, he was
entitled to restrain the nuisance, in so far as it affected his prop-
erty and its use in a manner distinct from the public in general.

**Same:** USE OF STREETS: HITCHING POSTS: NUISANCE. A city council
5  has charge and supervision of the streets of the city, and may
lawfully authorize and permit their use for purposes other than
travel, when such use is conducive to the public convenience and
tends to make the streets of greater utility. Thus it may construct
and maintain hitching posts in the streets for the accommodation
of the public, and they will not of necessity constitute a nuisance.

*Appeal from Green District Court.*—HON. F. M. POWERS,
Judge.

WEDNESDAY, JULY 2, 1913.

SUIT by plaintiff against defendant city and its officers
to enjoin an alleged nuisance. There was a decree for plain-

tiff enjoining the nuisance and requiring the removal of hitching posts. Defendants appeal.—*Modified* and *Affirmed.*

*Church & McCully,* for appellants.

*Howard & Sayers,* for appellee.

Preston, J.—Plaintiff is, and since 1905 has been, the owner of a two-story business property in said city of Jefferson, fronting east on Cherry street; the lower story used as a store, with offices above. Main street, which runs east and west, is on the south side of plaintiff's property and is eighty feet wide. It is one of the main traveled streets of the city. Plaintiff's lot is one hundred thirty-two feet long north and south and twenty-two feet wide. The building covers all but about thirty feet of the west end of the lot. The main entrance to the storeroom is at the southeast corner, and there is a side door on the south, about half way back. Plaintiff contemplates putting in another door east of this, twenty or twenty-five feet from the southeast corner, as we understand, for the purpose of reaching the basement. The stairway leading to the second story is on the south side of the building and is four feet wide. Prior to the summer of 1911 the sidewalk at this point was six feet wide, and there was, and for fifteen years or more there had been, a row of hitching posts and chains in the street south of the walk. As we read the record, plaintiff's building faces the southwest corner of the public square; Main street running through the city on the south side of the square and on west past plaintiff's building.

In 1911, probably because plaintiff's stairway took up so much of the sidewalk, and perhaps for other reasons, it was agreed between plaintiff and one of the councilmen, who was chairman of the street committee, that the city would remove the old posts and plaintiff would widen his walk to twelve feet and put in a cement gutter. Nothing was said

as to whether or not the posts should be replaced. Plaintiff did build a cement walk twelve feet wide and put in a gutter two feet wide. He also put in a cement approach or crossing over the walk near the southwest corner of his building as an entrance to a coal chute in the west end of the building. Thirteen new hitching posts were put in, commencing one foot east of the east side of this driveway and extending east to within twenty-eight feet of the lot line. The posts are eight feet apart, except that at the point opposite plaintiff's south door a space of nine feet has been left. The city contemplated connecting the posts with chains, or gas pipe, but this had not been done when the injunction was served. On the opposite side of the street there is a parking twelve feet wide, a part of the way west from Cherry street. Plaintiff complains that teams hitched to the posts are not always driven square up to them but are hitched diagonally across his coal chute crossing and the opening opposite the south door, thus interfering with his right of ingress and egress; that the city permits manure to accumulate in a ridge back of where the horses stand, causing offensive odors, particularly in hot weather; and that the vehicles extend so far into the street as to obstruct travel, and that the posts should be removed as the only way by which the nuisance may be abated. Appellant contends that the posts are not a nuisance *per se;* that there were hitching racks at this point when plaintiff bought his property and had been for many years prior thereto; that plaintiff has acquiesced in having the racks along said premises and is estopped from asking an injunction; that plaintiff, a private person, even though a citizen and taxpayer, cannot maintain the action as to the alleged obstruction of travel. It denies that there was any nuisance, but does not seriously object, in this court, to a decree abating the alleged nuisance as to the accumulations of manure and the interference of plaintiff's right of ingress and egress to his property. It does object to the decree requiring the removal of the posts. The trial court found that the posts

as used were a nuisance and interfered with the free enjoyment of plaintiff's said premises and with the free access, ingress, and egress thereto.

I. The temporary injunction was made permanent and the posts were ordered removed. There was a conflict in the evidence as to whether there was any unusual accumulations

**1. MUNICIPAL CORPORATIONS: nuisance: hitching racks.** from the manure or offensive odors therefrom. Our conclusion is that the court was justified in finding that there was a nuisance because

of this, and that there was some interference with plaintiff's right of ingress and egress to the property. But the racks are not a nuisance *per se*. 29 Cyc. 1175.

II. We think the trouble can be remedied without removing the posts. It will be observed that there is a space of twenty-eight feet near the front of the storeroom east of the

**2. SAME: nuisance: abatement.** last post. There is no serious complaint that this is not sufficient at that place. There are no posts west of the crossing to the coal chute;

this crossing is used principally, if not entirely, for hauling coal for the purpose of heating the building and probably is not so used to any considerable extent. The evidence shows that occasionally a team was hitched diagonally across this crossing, when coal was being hauled, so that the team had to be removed.

It seems to us that the removal of one post next to this crossing would obviate this difficulty so that plaintiff would not suffer any material injury. The removal of another post opposite the south door would leave a space of seventeen feet, which ought to be ample space in which to back a team, to load and unload merchandise, if there were no chains across this space. The three openings mentioned will answer all requirements. The city should be required to keep the street clear of manure accumulations so as to prevent a nuisance.

III. The building on plaintiff's lot was erected twelve or fifteen years ago and replaced another building. Plaintiff

bought the property in August, 1905. At that time the old
hitch racks were in the street substantially
as are the new ones, except that they were
closer to plaintiff's building. The evidence
does not show that plaintiff encouraged or influenced the city
to erect either the old or new racks. The old posts were
removed to allow plaintiff to widen his walk. Plaintiff testi-
fies he understood they were not to be replaced, but there was
nothing said about that, and we mention it here because of
appellant's claim that there was such acquiescence on plain-
tiff's part as to estop him from maintaining this action. Fur-
thermore, the evidence tends to show that the nuisance caused
by odors from the droppings from horses increased at about
the time and after the new racks were put in. It was a con-
tinuing nuisance. Cases from other states are cited by appel-
lant to the effect that there may be such laches and acquies-
cence by a party or his grantor as to bar relief in equity, and
that the injured party must look to a court of law for his
remedy, but this is not necessarily so. *Bushnell v. Robeson,*
62 Iowa, 540; *Gilchrest v. Des Moines,* 128 Iowa, 49.

Mere delay in bringing suit to enjoin a continuing nui-
sance is not necessarily such laches or acquiescence as to con-
stitute an estoppel. *Harley v. Merrill Brick Co.,* 83 Iowa, 73;
29 Cyc. 1231; 1 Am. & Eng. Enc. Law (2d Ed.) 74.

We think no such acquiescence or laches was shown as
to prevent plaintiff from maintaining this action.

IV. A nuisance may be both public and private. Plain-
tiff was affected in a different manner than the general public
as to the odors and as they affect his property and its uses,
also as the racks affect his right of ingress and
egress, but not so as to the alleged public
nuisance by reason of vehicles extending back
into the street, and the claimed obstruction
thereof as to the public generally. Of this he may not com-
plain in an action of this character. *Ingram v. Railway,* 38
Iowa, 669; *Park v. Railway,* 43 Iowa, 663; *Young v. Roth-*

3. SAME: nui-
sance: laches:
estoppel: evi-
dence.

4. SAME: nui-
sance: public
and private:
rights of indi-
vidual.

*rock,* 121 Iowa, 588; *Harley v. Merrill,* 83 Iowa, 73; *Southern Express Co. v. Long* (C. C. A.) 202 Fed. 462.

Counsel for appellee concede the rule to be that a citizen cannot ordinarily complain as to the general use of the public streets, but claims that, where his interest as a private citizen is also coupled with the fact that he sustains a special damage of a private nature, then such facts may be taken into consideration. This is true, as we have already indicated, in so far as plaintiff and his property are affected differently from the general public.

V. The foregoing renders it unnecessary to enter into any extended discussion of the questions as to the power and duty of a city in regard to its streets and obstructions therein.

5. SAME: use of streets: hitching posts: nuisance.
These have been decided many times and no new question is presented on this appeal. It is contended by appellee that because the statute (section 5078) provides that the obstruction of streets is declared to be a nuisance, and that by section 753 cities are required to keep the streets open and free from nuisances, and that because of the holdings of this court, in certain cases, that a street is a public way from side to side and from end to end, and that any private use thereof which in any way prevents its free use as a public way to its full extent is an obstruction, therefore any obstruction whatever, even with the permission of the city under the provisions of the statute, is an obstruction and a nuisance. *Quinn v. Baage,* 138 Iowa, 426; *Lacy v. Oskaloosa,* 143 Iowa, 704. This is the law as applied to certain classes of cases. We are not now discussing the question of the liability of the city for an injury to a private individual caused by an obstruction in a street and other cases where this doctrine is applied. But other provisions of the statute give to the cities supervision and control of its streets and other powers. Sections 753, 754, 755.

It was said in *Perry v. Castner,* 124 Iowa, 386, 391.

But for the custom of making use of part of the streets as areas for light and to furnish access to basements since the

organization of the state, we should experience difficulty in the interpretation of these statutes. For more than fifty years cities and towns have assumed the power to care for, supervise, and control the streets, including the right to permit their reasonable use by abutting owners in obtaining access to all parts of their property, and such authority has been recognized by this court. . . . In view of these expressions, the interpretation put on the statute for many years, and the universal use of the streets close to buildings for areas and cellar stairways, we are not ready to say that the power to permit them is not included in the sections of the Code quoted. Indeed, the necessities of modern life demand the location of many obstacles in the highway which in the olden time would not have been tolerated even in the King, who, according to Blackstone, might not license purprestures. Such are the poles used in the operation of telephone, telegraph, and street railway systems, the curbstone, parking, and the like.

The paramount object in establishing and maintaining streets is for the purpose of public travel, subject to this, they may lawfully be used for other purposes, which are conducive to the public convenience, and which tend to make them of greater utility and convenience to those who legally have a right to their use. *Spencer v. Andrews,* 82 Iowa, 14; *Young v. Rothrock,* 121 Iowa, 588; *Sikes v. Manchester,* 59 Iowa, 66; *Lacy v. Oskaloosa,* 143 Iowa, 704; *Haight v. Keokuk,* 4 Iowa, 199.

These racks are a convenience to the people who come to town on business or for social gatherings. It is a practical question for many of the towns and smaller cities of the state. The hitching posts would not be wanted perhaps on the public square, so they were placed on a side street. The city could order their removal, as was done in the *Lacy* case, or it can permit them to remain, provided they do not unreasonably obstruct the street or work private injury to others. It is a question of government and supervision under authority delegated by the Legislature.

As has been said in some of the cases, this power must be placed somewhere, and the Legislature has placed it in the

council of the cities, subject to review by the courts as to whether the power has been exceeded. In our opinion the evidence in this case does not warrant an order for the removal of the racks. There is some evidence that at times hayracks, with poles extending out into the street, are hitched to these posts. But this was not, and probably would not be, of frequent occurrence. In such a case the police officers could doubtless require their removal if the street is thereby unreasonably obstructed. The decree will be modified in accordance with the views expressed in the opinion and affirmed in other respects. The cause will be remanded for a decree in harmony with the opinion.—*Modified* and *Affirmed.*