PAUL WENDT, Appellee, v. INCORPORATED TOWN OF AKRON, Appellant.

**Municipal Corporations:** STREETS: RIGHTS OF ABUTTING OWNERS:
1 AREAWAYS. While the statutes require cities and towns to keep their streets open and free from nuisances, they also give to municipalities the care, supervision and control of the streets; and under this power they may permit an abutting property owner, who has an interest in the street distinct from his interest as a citizen, to use a portion of the street for areaways and stairways, so long as they do not unreasonably obstruct the street or cause injury to others. And where an abutting owner has been permitted to maintain cellar stairs from the street to the basement of his building for a long series of years, and from the original construction of the building, consent and permission to do so may be implied.

**Same:** RIGHTS OF ABUTTING OWNER: NEGLIGENCE OF CITY. Where a
2 city permitted the owner of a building to construct, and for a long series of years to maintain a cellar way from the street to his basement, he became more than a mere licensee; and until such permission was revoked the city was bound to use ordinary care in grading and guttering the street, so as not to dam up the surface water and cast it upon the property of the owner.

**Same.** While a city has power to regulate the placing of telephone poles
3 in its streets, it does not have the right to negligently place poles in

such manner as to dam up the gutters and culverts, and cast the
water upon abutting property to the injury of the abutting owner,
or his lessee.

Same: CONTRIBUTORY NEGLIGENCE: EVIDENCE. An abutting property
owner or lessee is only required to exercise ordinary care to prevent
his property from being flooded by the surface water in the street;
he is not required to ascertain the slope of the ground in the town,
or to know what streets were graded, or to employ an engineer to
ascertain what amount of water would flow by his property. Under
the evidence in this case the question of plaintiffs contributory neg-
ligence in maintaining stairways from the street, by which surface
water entered the basement of his building, was for the jury.

*Appeal from Plymouth District Court.*—HON. DAVID MOULD,
Judge.

WEDNESDAY, SEPTEMBER 24, 1913.

ACTION to recover damages for flooding the basement of
plaintiff's store, and injury to merchandise therein, alleged
to have been caused by the negligence of defendant in the
grading of its streets and construction of gutters, by which,
it is claimed, the defendant collected and diverted surface
water and failed to provide outlets. There was a trial to a
jury resulting in a verdict and judgment for plaintiff for
$880.99. Defendant appeals.—*Affirmed.*

*T. M. Zink,* for appellant.

*W. T. Kidd,* and *Struble & Struble,* for appellee.

PRESTON, J.—The record contains 450 pages of printed
matter; of this the arguments cover two hundred and forty
pages, in which more than nine hundred cases are cited.
Appellant has seventy-eight alleged errors relied upon for
reversal, and appellee has one hundred and twelve points
relied upon for affirmance. We appreciate diligence and
thoroughness on the part of counsel, but unless there is dis-

crimination it is sometimes burdensome. There are other cases on the calendar. Manifestly it would be impracticable to discuss all points argued. The material points are about as follows: The town of Akron is situated on low land. There is a bluff on the east, high land to the north, and a part of the land south is low. Running along the south side of the town outside of the corporate limits is a large ditch which drains about a thousand acres of land. The water in this ditch flows west, sometimes overflowing, when a part of the overflow runs to the north. At least it is plaintiff's claim that some of the overflow from this ditch reaches plaintiff's premises by reason of the grading and guttering of the streets north of this ditch. In the south part of town there is a slight rise in the ground, south of which the water would naturally run west. The natural drainage in the town generally is northwest to Sioux river, which runs near to the northwest part of town. Plaintiff, as tenant, occupied the first story and basement of a two-story brick building in the town of Akron as a store. The building fronts to the north and is on the corner of Reed street, which runs east and west, and Third street on the east running north and south. It is three or four blocks from the river. Mill street is north of and parallels Reed, and Dakota street on the south is parallel with Reed. Fourth street is east of Third. School house square is two or three blocks southeast from plaintiff's premises. There is a fall of about nine feet from the schoolhouse to plaintiff's corner. There is or was a low place or swale running northwest from the schoolhouse, crossing Reed street between Third and Fourth, about a half block east of plaintiff's property. Plaintiff claims that the sidewalk and embankment on Reed street has a tendency to hold the water in the swale in time of high water and throw it west towards plaintiff's property; that there are no openings in the embankment. The ground is low at plaintiff's corner. The town had not passed any ordinance establishing grades, but it is claimed by plaintiff, and there is evidence tending to so show, that the building

occupied by plaintiff was built about fifteen years prior to the injury complained of, on a grade given by the city authorities. The top of the cement sidewalk at the north and east of plaintiff's building is about one foot above the gutter; some time before the flooding in question the walk had been made higher to prevent water coming into the basement. The face of the walk was cemented from the top to a point below the surface of the gutter. There is a cement gutter thirty-three inches wide at the north of plaintiff's building which carries the water west, and a dirt gutter on the east side of the walk which carries the water north. There is a culvert from the east side to the west side of Third street at the northeast corner of plaintiff's building. This culvert is four feet wide and one foot deep and is covered, forming a crossing. At the northeast corner of plaintiff's sidewalk is a telephone pole about fifteen inches in diameter in the gutter or culvert; it passes through the cover of the culvert and into the ground. This pole is four or five inches from the walk and to it and to the culvert a piece of 2x4 has been nailed. There are two basement windows at the front with gratings in the walk and four such at the south side of the building for light and ventilation. On the east side of the building at the northeast corner is an areaway twenty-five feet long and three feet wide with a stairway to the basement. These openings were constructed for the convenience of the owner and occupants of the property. There had been another basement stairway at the south end of the building, but this had been covered with plank and timbers joined tightly together. There were double doors at the foot of this stairway but the areaway had not been filled. This stairway was not in the street.

Without going too much into detail, this describes the general situation. The evidence is undisputed that defendant had, by grading its streets, constructing gutters, etc., attempted to care for and control the surface water and to carry it to the river. Many grounds of negligence were charged by plaintiff. Those submitted to the jury were substantially as

to whether defendant was negligent in diverting the surface water naturally flowing on the south side of town to the north in such manner as that said water or a part of it was collected and carried to the plaintiff's corner, and in diverting other surface water falling on the town site, or which flowed down upon the town site from the ravines east of the town and taking it to plaintiff's corner; whether defendant obstructed the water by the telephone pole at plaintiff's corner and other obstructions; and in failing to furnish sufficient outlets for the water. The evidence was such that it was for the jury to say whether the negligence of defendant had been established, and, if so, whether it was the proximate cause of the damage, and as to whether the storm was unprecedented. The verdict has sufficient support as to these matters.

Defendant answered, denying all allegations of the petition not admitted; admitted that it worked and graded the streets, built culverts at various places, and that at other places it did not build culverts; alleged that one of the cellarways and the areaways in the sidewalk were located in the street without authority of the town, and that they were a nuisance, and that by reason thereof plaintiff was a trespasser; that the water passed into the basement through these openings and through the old cellarway at the south end of the building; that plaintiff contributed to his loss and damage; that the building is situated in what was the natural flow of the surface water, and that the acts of defendant did not place plaintiff in any worse condition, but that he was in a better situation than he would have been had it not worked the streets; that the storm that caused the damage was unprecedented. The affirmative allegations of the answer are denied by plaintiff, except he admits using the areaways and says he did so in the usual way of merchants and for no other purpose. He says the building was constructed fifteen years prior to the injury complained of, and that the authorities of the town had knowledge of the construction thereof with all openings into the cellar, made no objection, and consented

thereto and acquiesced therein. It is conceded that plaintiff was damaged, and there is no contention as to the amount of the verdict.

The evidence establishes that the water passed into the basement through the areaways and cellar stairways. There is some conflict as to what portion went into the front cellarway and windows and what part at the old cellarway. Plaintiff claims that the water was obstructed at the corner and backed into the front cellarway and the south windows. He testifies he did not then know that any water got in at the back cellarway, while defendant claims that the basement would have been filled from this alone.

I. The larger part of appellant's argument is taken up with matters connected with the rights and liabilities of the parties because of the use of the basement openings and because the water passed into the basement through them, thus causing the damage. A determination of the question in regard to the areaways will dispose of some of the other points. It is contended by appellant that plaintiff and the owner of the building occupied by him had no right to use any part of the street for private purposes nor for areaways, cellarways, and windows, and that under the statute they constituted a nuisance; that the town had no power to grant any such rights. Many cases are cited in support of the proposition. No question is made in regard to plaintiff's rights because he is the tenant of the owner. It is true the statute provides that an obstruction in the street is a nuisance, and that cities and towns are required to keep the streets open and free from nuisances. Code, sections 753, 5078. But the statute also provides that they shall have the care, supervision, and control of all public streets within their limits. Code, section 753. There is a conflict or contradiction in these statutes. But an abutting property owner has an interest in the street distinct from his interest as a citizen of the municipality *(Long v. Wilson,* 119 Iowa, 267) ; and

1. MUNICIPAL CORPORATIONS: streets: rights of abutting owners: areaways.

the rule is settled in this state that, under the power to control, cities and towns may permit the use of streets close to buildings for areaways and cellar stairways, if properly protected, so long as they do not unreasonably obstruct the street or cause private injury to others. *Day v. City,* 70 Iowa, 193; *Keyes v. City,* 107 Iowa, 509; *Perry v. Castner,* 124 Iowa, 386; *Reynolds v. Bank,* 155 Iowa, 519. The property owner does not have the right to put in these openings in the sense that he can compel the town to grant him the privilege. It has the right to either refuse or permit. In the case of *Lacy v. Oskaloosa,* 143 Iowa, 704, the city refused to permit hitch racks in the street. In *Smith v. Jefferson,* 161 Iowa 245, the city permitted them.

In the present case no express authority from the town is shown for the construction of these openings. But there is evidence tending to show that the grade was furnished by the authorities of the town before the building was erected, and that the building was erected on such grade. The evidence shows that the openings were put in when the building was built; that the town had knowledge thereof and for fifteen years had permitted them without objection. Under such circumstances, so far as this case is concerned, consent and permission may be implied. *Perry v. Castner,* 124 Iowa, 386; *Babbage v. Powers,* 130 N. Y. 281 (29 N. E. 132, 14 L. R. A. 398, 25 Cyc. 642).

Plaintiff was a licensee in one sense, but he was not a trespasser, and until the license was revoked he had a right to use the openings in the usual way, as he did. The town, 2. SAME: rights of abutting owner: negligence of city. having consented to such use, cannot negligently divert or collect water and throw it on plaintiff's property to his injury. Until the permission is revoked, the basement stairways and other areaways were a part of the building, and plaintiff had the right to use them as such in conducting his business. Counsel for appellant contends that the same rule applies to a licensee as to a trespasser and that the doctrine of ordinary care does

not govern the rights of plaintiff and defendant, but that nothing but wanton or willful harm can render appellant liable.

The general rule doubtless is that an owner of premises owes to a licensee no duty as to the condition of such premises save that he should not knowingly let him run upon a hidden peril or wantonly cause him harm. Appellant cites 29 Cyc. 449, 451, and the following Iowa cases: *Gwynn v. Duffield,* 66 Iowa, 713; *Thomas v. Railway,* 93 Iowa, 248; *Connell v. Railway,* 131 Iowa, 622; *Brown v. Canning Co.,* 132 Iowa, 637; *Anderson v. Railway,* 150 Iowa, 465; and other similar cases. These cases involve the question as to the use of dangerous premises and whether the persons injured thereon were trespassers, bare licensees, or licensees by invitation. In the *Connell* case a boy was injured by an electric wire and the court instructed the jury that if the place where plaintiff was injured was resorted to by persons generally, of which the defendant had knowledge, then it was the duty of defendant to exercise ordinary care to prevent danger, and a failure to exercise such care would constitute negligence. This is on the theory that plaintiff was more than a bare licensee. The correctness of the instruction just referred to was not challenged, and that point was not decided in that case, but the rule seems to be the correct one in a case of that kind. *Clampit v. Railway Co.,* 84 Iowa, 71; *Thomas v. Railway,* 103 Iowa, 659; *Schmidt v. Coal Co.* (Mich.) 123 N. W. 1122; 29 Cyc. 443.

There are many cases in addition to our own on the question in regard to the degree of care required as to licensees, by railways (33 Cyc. 767, 768), by shipowners (36 Cyc. 172), by users of steam (36 Cyc. 1261, 1262), and so on, but we are not cited to any cases precisely like the present. This is not a case where a third person was injured by an excavation, or a similar danger on land, or by an obstruction in the street for which both the town and the abutting owner might be liable, as, for instance, if the basement stairway in question had not

been properly guarded by a railing and some one had fallen into it. The question here is: What are the rights and liabilities of plaintiff and defendant as between themselves? We think the rule of the cases cited by appellant does not apply to the facts of this case. In this case there is no question as to dangerous premises and an injury thereon by a trespasser or licensee. Plaintiff had an abutter's interest in the street; defendant permitted the plaintiff to use the openings; they had been so used for many years as a part of the building; defendant had knowledge of their location, construction, and use and consented thereto. Plaintiff was more than a trespasser or bare licensee, and so long as defendant permitted him to so use the openings it owed him the duty of exercising ordinary care in grading and guttering its streets to not divert, collect, or dam up surface water and throw it on plaintiff's property. Whether or not it did so was a question for the jury. Defendant, after saying to plaintiff or the owner of the property, ''You may put in and use these windows and stairways,'' cannot, after granting or permitting such use, grade and gutter its streets without any regard to the fact that plaintiff is so using them. Furthermore, it appears that the alleged negligence in grading and guttering the streets, placing telephone poles in the gutter, was after areaways were constructed, so that, conceding that plaintiff or the owner of the building took the use of that part of the street subject to existing risks and dangers, defendant should not negligently add to the risk and danger so long as the permission remains unrevoked.

Appellant's counsel cites *City of Guthrie v. Nix,* 5 Okl. 555 (49 Pac. 917), and *City v. Adams,* 72 Ill. App. 670, as the only cases where a basement was flooded because of water passing through areaways in the sidewalk or because of an excavation under the walk. In those cases a recovery was denied on the theory that the plaintiffs were trespassers, and that under the laws of Illinois and Oklahoma cities do not have the power to grant or permit such use of the streets.

Those two cases really turn on the question of contributory negligence because of their facts. Appellee has argued that defendant was guilty of gross negligence and that its actions were wanton and willful. In the instructions the court told the jury that the defendant was liable if it failed to exercise ordinary care. This was correct, and at the time of the trial defendant's counsel seems to have thought so, for the defendant's offered instructions 8 and 10 are on that theory. We do not find that defendant requested any instructions on the theory that it was liable only for gross negligence. In fact, in argument, counsel contends that the allegations of plaintiff's petition are not sufficient to justify a recovery for gross negligence.

II. Appellant contends that it had the right to regulate the placing of telephone poles in its streets. Under the construction of Code, section 5078, for which appellant contends, as to the areaways, the poles might be obstructions in the streets, but under sections 753 and 775 of the Code and the decision of this court in *Perry v. Castner,* 124 Iowa, 386, and other cases, cities and towns do have that right. But the town could not authorize the placing of a row of poles one foot apart across the street. The illustration is extreme for the purpose of showing that there is a limit to the right. The town does not have the right to negligently place the poles in such a way as to dam the water in its gutters and culverts and back it up to the injury of property owners.

3. SAME.

III. It is contended by appellant that under the evidence the plaintiff was guilty of contributory negligence as a matter of law. It claims that, but for the basement stairways and the areaways in the sidewalk, the water would not have passed into the basement, and that this is particularly so as to the abandoned stairway at the south end of the building. In our opinion it was clearly a question for the jury as to whether plaintiff was guilty of such contributory negligence

4. SAME: contributory negligence: evidence.

as to defeat a recovery. The court instructed the jury on this question substantially that, if plaintiff was guilty of any negligence contributing to his injury, he could not recover, and that if the jury found from the evidence that plaintiff, in leaving the cellarway and areaways open, did not act as a reasonably careful and prudent man would act under similar circumstances, he could not recover, and then said:

(12) In determining whether or not both parties to this action acted with reasonable care in doing what the evidence shows they did do, you are instructed that reasonable care depends upon the dangers to be apprehended and guarded against. And in determining whether or not the parties acted with reasonable care, you may and should take into consideration the evidence concerning the town site, the liability to excessive overflows caused by water coming from the ravines east of said town, the frequency of violent storms causing such overflows, the knowledge, if any, the parties had of the conditions existing, as shown by the evidence, and all other evidence introduced tending to show reasonable care or want thereof.

In the two cases relied upon by appellant, namely, *Guthrie v. Nix* and *City v. Adams, supra,* it was held that plaintiffs were, under the facts shown, guilty of contributory negligence. In the Oklahoma case there were special findings by the jury that an excavation under the sidewalk by plaintiff contributed to the injury. In the Illinois case it is said there was no evidence that any considerable amount of water would have passed into the cellar but for the open gratings. In the instant case the water could not have flowed into the basement through the front basement stairway or through the gratings in the walk, unless the water was high enough to come up over the walk. There was evidence from which the jury could have found that defendant was negligent in diverting and collecting the water and obstructing it at plaintiff's corner. The sidewalk at this point had been raised several

inches prior to the storm in question for the purpose of keeping the water out of the basement. The town authorities had been spoken to about the water at this corner. The water had never been up over the walk before. As we have held, the defendant owed plaintiff the duty of exercising reasonable care to not flood plaintiff's premises, and plaintiff's reliance on the performance of such duty is not necessarily contributory negligence. Plaintiff knew of the openings in his walk and in a general way the slope of the ground in the town towards the northwest, but he did not know, and was not required to know, exactly what streets had been graded, or the extent thereof, or to get an engineer to take levels on the different streets to determine the amount of water which would come to his corner. He was required to use ordinary care to prevent injury. It appears that the front doorstep of plaintiff's store is substantially flush with the top of the sidewalk, perhaps an inch or such a matter above it. Had the water been a little higher it would have run into the store through the doorway in all probability. There would have been more water in the street and over the walk if it had not gone into the basement through the areaways. As to the abandoned cellarway at the south of the building, it appears that there were double doors at the foot of the stairway, one of wood on the inside and one of iron on the outside.

When the sidewalk at this point was removed some months after the flooding of plaintiff's cellar, there were evidences of the earth having been washed out under the walk. There are other circumstances shown by the evidence bearing on the question. We have set out enough to show that it was a question for the jury whether, under all the circumstances, plaintiff failed to exercise ordinary care in not filling up this stairway and closing the other openings. See, on this question, *Helphand v. Telephone Co.*, 88 Neb. 542 (130 N. W. 111, 33 L. R. A. (N. S.) 369, and note).

IV. Appellant claims that plaintiff was bound to protect himself against his claimed damage through the alleged negli-

gence of defendant. Among many authorities cited under this point are *Simpson v. Keokuk,* 34 Iowa, 568; *Bennett v. Mt. Vernon,* 124 Iowa, 537, 543. We assume from this that appellant's claim is that if plaintiff could have prevented the injury at a moderate expense, or by ordinary efforts, it was his duty to do so. But the argument on the point is not along that line. Our attention is not called to any evidence in the case to which such a rule could apply. The evidence shows that, as soon as plaintiff learned that the water was running into the basement, he and his clerk removed as much of the goods as they could. Plaintiff cleaned out the gutter on the east side of the store a day or two before the flooding of the basement. This is all the evidence we find to which this proposition could be applied. We have noticed all the points which seem to require particular attention. Others will be noticed briefly. The defendant's evidence was directed almost entirely to the claim that the storm was an unprecedented one. There is no evidence that a rain gauge was used to determine the exact amount of rainfall of this or other storms. It is to some extent a matter of opinion of the witnesses. It may be that the water was higher at plaintiff's corner than at other times, but this may have been because of the defendant's acts in grading its streets or obstructing the water. There was such a conflict in the evidence on this proposition that the court properly submitted it to the jury. The instructions as to this matter correctly state the law. The court correctly instructed the jury in regard to the right of defendant to improve, grade, and gutter its streets and its rights and liabilities in regard to surface water. There was no error in stating the issues to the jury. After a careful examination of the entire record, it is our opinion that defendant has had a fair trial and that there is no prejudicial error.

The judgment is therefore *Affirmed.* The Justices all concur, except Justice Gaynor, who took no part.