(Opinion published 56 N. W. Rep. 165.)

---

CATHERINE STOEHR *vs.* CITY OF ST. PAUL.

Submitted on briefs May 15, 1893. Affirmed Sept. 8, 1893.

**Surface Water Gathered by Street Embankment—Duty of City in the Care of.**

The defendant, in grading a street, encountered a ravine across which it was found necessary to raise an embankment on the line of the street. In this ravine a large amount of surface water is collected and carried off during each year. In the plans and specifications for the improvement adopted by the defendant, and in order to provide suitable drainage for the waters naturally collecting in the ravine, a culvert or sluiceway was constructed in the channel thereof, under the embankment. *Held,* that in the maintenance of the embankment as constructed, which might create a reservoir of water above it, dangerous to persons and property in the ravine below, unless the culvert was kept open, it was the duty of the defendant to exercise reasonable care and diligence to keep the same open, and to prevent an accident from such collection of water or the undermining and destruction of the embankment thereby.

**Negligence in the Care of Culvert.**

Evidence *held* to disclose negligence on the part of the defendant, in failing to keep open a sluiceway under such embankment, resulting in the accident complained of.

Appeal by the defendant, the City of St. Paul, from an order of the District Court of Ramsey County, *William Louis Kelly*, J., made March 14, 1893, denying its motion for a new trial.

The plaintiff, Catherine Stoehr on August 3, 1892, owned and occupied a house and lot No. 383 Prescott Street near Concord in West St. Paul. It was near the outlet of a ravine through which surface water falling on the higher land to the south flowed down to the flats bordering the Mississippi River. Page Street ran east and west crossing this ravine between plaintiff's house and the high land. In 1889, the City graded Page Street across this ravine. It put in a box culvert made of plank to carry the water across under the street. It was not of sufficient strength to withstand the weight of the embankment built over it. In 1892, it ceased to operate and the water stood in a large pond above the embankment. The city officers examined it and had a man crawl up from the lower end of the culvert into it some distance and he reported that the sides and top of the culvert further up under the street were crushed in and the culvert closed. The City took no efficient measures to open it. On July 26, 1892, a heavy rain fell and the water collected in a large pond twenty feet deep in the ravine above the embankment. The city officers came and examined it and set men with three and a half inch rubber hose to syphon the water over the street into the ravine to the north. They worked at this until the evening of August 3rd, when the street embankment gave way and the accumulated water went down the ravine in a body, struck and destroyed plaintiff's house and did her great personal injury. She brought this action to recover damages for her personal injury and obtained a verdict for $2,500. The defendant moved for a new trial, but was denied and it appeals.

*Leon T. Chamberlain*, and *Frederic A. Pike*, for appellant.

If the defendant employed competent engineers or other agents to construct the Page Street fill, and they in the exercise of honest judgment constructed a drain or culvert through the fill, of such capacity and character that they were reasonably justified in believing and did believe it would be, in view of all the circumstances, sufficient to carry off the water to pass through it, the City would not be liable for the results of its failure to operate well, if the

drain did prove insufficient. The defendant is not an insurer of the means adopted. *McClure* v. *City of Red Wing*, 28 Minn. 186; *Paine* v. *Delhi*, 116 N. Y. 224; *Pye* v. *City of Mankato*, 36 Minn. 373.

The appellant relies with entire confidence upon this measure of its duty and liability in the premises. . The evidence shows that the City performed this duty to the full extent required by this rule. *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *Rowe* v. *St. Paul, M. & M. Ry. Co.*, 41 Minn. 384.

*Butts & Jaques*, for respondent.

This Page Street culvert was not sufficiently strong to sustain the weight placed upon it and broke down and failed to carry off the water that gathered in this ravine above the fill, so that it gradually accumulated and remained there. On July 26, a very heavy rain fell which raised the waters south of this embankment to within a foot or two of the top of the street so that the waters there stood from 21 to 22 feet deep and the embankment had become soaked and very dangerous. The City knew this danger and stationed men on the fill to syphon out the water, and with instructions, in case the bank gave signs of going out, to go down the ravine and warn the inhabitants below. The fill withstood this rain and did not go out until the evening of August 3, 1892, when the embankment gave way and the waters rushed down the gorge in one huge wave, carrying everything before them, destroying plaintiff's home and inflicting the injury complained of. No warning or notice of any kind was ever given to plaintiff or any inhabitant below the fill. This was evidence of negligence.

Defendant, having adopted this plan and built this wooden culvert, is liable if the plan was defective or was negligently carried out. *Evansville* v. *Decker*, 84 Ind. 325; *City of Indianapolis* v. *Lawyer*, 38 Ind. 348.

Failure to keep it in repair, fit to carry away the water for an unreasonable length of time, was negligence. *Buchanan* v. *City of Duluth*, 40 Minn. 402; *Alden* v. *City of Minneapolis*, 24 Minn. 254.

The city is liable if this ravine was a natural watercourse. *McClure* v. *City of Red Wing*, 28 Minn. 186; *O'Brien* v. *City of St.*

*Paul,* 18 Minn. 176; *O'Brien* v. *City of St. Paul,* 25 Minn. 331; *Simmer* v. *City of St. Paul,* 23 Minn. 408; *Kellogg* v. *Thompson,* 66 N. Y. 88; *Wheeler* v. *Worcester,* 10 Allen, 591; *Rochester White Lead Co.* v. *City of Rochester,* 3 N. Y. 463.

Whenever a municipal corporation collects surface water, intentionally or negligently, and allows it to flow upon the land of an individual, it is liable for the damage done to him. *Burford* v. *City of Grand Rapids,* 53 Mich. 98; *Rowe* v. *St. Paul, M. & M. Ry. Co.,* 41 Minn. 384; *Hogensen* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 224; *Township of Blakeley* v. *Devine,* 36 Minn. 53; *Pye* v. *City of Mankato,* 36 Minn. 373; *Gilluly* v. *City of Madison,* 63 Wis. 518; *Weis* v. *Madison,* 75 Ind. 241; *Freburg* v. *Davenport,* 63 Iowa, 119; *Gross* v. *City of Lampasas,* 74 Tex. 195.

VANDERBURGH, J.    The defendant, during the years 1889 and 1890, in improving and grading Page street in West St. Paul, made a fill in and across a ravine by depositing therein earth from the vicinity.    This ravine runs northerly to the Mississippi river, through the bluff, from the high level land above, a distance of three-quarters of a mile or more, with an average fall of more than 300 feet to the mile, and affords surface drainage for a considerable tract of land.    The sides are abrupt and steep, and at the bottom its width varies from twenty-five to one hundred and fifty feet. It is so situated that large quantities of water, the result chiefly of rains and melting snow and ice, naturally flow northerly through it to the river, and in some places have worn a well-defined channel; and the evidence tends to show that there was such a channel through which the water flowed in the ravine at the place where the fill was made on Page street, and for a considerable distance below.    At this place the fill for the street is about one hundred and forty feet wide at the bottom, sixty feet wide at the top, and about twenty-four feet on the upper, and thirty-six feet high on the lower, side.    It was constructed in accordance with the plans and specifications therefor adopted by the city.    In pursuance thereof, across and at or near the bottom of the fill, and to answer the purpose of a culvert to carry off the water, was placed a box two by three feet in size, and two hundred feet long, made of plank, and

laid in the bed or channel of the ravine. The structure was finished early in 1890, but the culvert soon after became clogged, so as to be ineffectual to carry off the water which was gathered above the fill by the obstruction caused by it. The consequence was that in July, 1892, a large quantity of water had been collected and retained in a pond above the fill, standing 10 to 12 feet in depth against it. This was increased largely by an extraordinary rain storm occurring July 26th of that year, which raised the water in the pond above the embankment to within one or two feet of the level of the street. For 2,000 feet above and 1,000 feet below the reservoir the descent in the ravine was very rapid, the fall being about seventy feet to the mile. Below, along its bank, were several houses, occupied by inhabitants, including the plaintiff. On the evening of August 3, 1892, the bank or fill gave way under the pressure of the water, and the pent-up waters rushed in a torrent down the ravine, causing the damage and injury complained of.

The topography and the condition of the ravine, showing well-defined channels in the narrow places, indicated plainly enough the presence of streams of water from melting snows and rains, recurring at intervals during the year, and constituted a sufficient warning of the necessity of making safe provisions therefor in grading the streets; and, as respects property owners and residents below the embankment in question here, who might be injured by a sudden release of waters, as from a reservoir, in case the fill should be undermined or break away, the measure of care and diligence used should have been commensurate with the degree of danger to be apprehended. The city authorities clearly recognized this obligation in the nature of the plans provided for the improvement; and, in order to prevent the accumulation of water, a sluiceway, sufficient to drain off the water in the ravine, was expressly required therein. The embankment was constructed for street purposes only. The material for the fill, composed of sand, gravel, and clay, taken from cuts in grading the street, without respect to the nature thereof or its capacity to resist percolation or pressure, was deposited upon the surface of the ground in its natural condition, without any preparation or clearing away of the grass, shrubbery, and small trees growing there. The embankment was therefore not built or maintained as a dam, but the city assumed the duty

and responsibility of maintaining a proper drain or culvert, and of keeping the same in order, and the action was brought, tried, and determined on that theory. It is very clear, also, from the evidence, that the city had constructive notice that the drain was closed and inoperative a long time before the accident, and actual notice early in July, 1892. The evidence tended to prove that in the spring of 1892, after the snow melted, the upper end of the box drain was several feet under water, and remained so continuously thereafter, and that in the previous years there was more or less water in the pond, and no effort was made by the city to remedy the defective drainage until after the 9th day of July, 1892, and the futile efforts and inadequate means thereafter made and resorted to to get rid of the water are hardly sufficient to relieve the defendant from the charge of negligence.

The evidence also tends to show that from the nature of the material used in the fill, and the manner in which it was put in, the water would naturally work under and through it, and it would become unstable and unsafe in consequence, and that signs of percolation, saturation, and softening of the bank had appeared for a considerable time previous to the accident.

And the jury found specially that the water in the pond had already "so weakened the fill before the great storm in July, 1892, that, but for this weakening, the fill would have held all the water subsequently accumulated there." Seasonable and proper drainage would therefore have saved the embankment. The evidence fails to show due diligence or proper and seasonable efforts after notice to open the drain or provide a new one. The plans were sufficient, and the drain probably large enough and suitable, for the purpose intended, and to have prevented the accident but for the subsequent neglect, the evidence of which we think was sufficient to establish the liability of the defendant.

Upon the state of the record, there was nothing misleading in the charge of the court, and nothing therein or in its rulings on the trial of which the defendant can properly complain.

Order affirmed.

(Opinion published 56 N. W. Rep. 250.)