JOSEPH NETZER *vs.* CROOKSTON CITY *et al.*

Argued Nov. 13, 1894. Reversed Nov. 28, 1894.

No. 9086.

**Invalid excuse for not repairing a city sewer.**

Where a city has built a sewer partly on private property, it is no excuse for failing to repair the same that it has no right to go upon such property to make repairs. It should have acquired such right.

**The defense of no fund must be pleaded to be available.**

In an action for damages for injury caused by failure to make such repairs, the defense that the city has no funds, and its financial condition is such that it is prohibited by its charter from making any contract incurring a liability for such repairs, if a defense, must be pleaded as such.

**Extraordinary care of a sewer not required.**

A municipal corporation is not required to exercise extraordinary care to keep its sewers in repair.

**Contributory negligence in not using stop valves.**

On the evidence, it was a question for the jury whether or not plaintiff was guilty of contributory negligence in failing to provide his sewer connections with proper valves, to prevent the water in the sewer from flowing from the main sewer, through such connections, upon his premises.

Appeal by defendant, the city of Crookston, from an order of the District Court of Polk County, *Frank Ives*, J., made February 12, 1894, denying its motion for a new trial after verdict for plaintiff for $500. The case is fully stated in the opinion of the court.

*De Forest Bucklen* and *Robert J. Montague,* for appellant.

The street in which this sewer was laid stopped at the edge of the right of way of the railroad and on this right of way was an embankment of earth sixteen feet high and sixty feet broad on its top. The sewer in question ran under it. On the top of the embankment were six railroad tracks on which a large number of trains were running. It was close to the depot and within the switching yards. This embankment was sliding, as it rested on quicksand. The railroad company was putting on gravel constantly and the bank continued to sink and slide. The extent to which the city had a right to interfere with the operation of the railroad by excavating under this embankment, or through it, or by carrying the sewage over the railroad tracks was at least doubtful. It was proper to show that the city had no such right, and that delays were caused in negotiating with the railroad company to acquire such rights. There was no evidence showing negligence or delay on the part of the city.

A municipal corporation is not civilly liable for injuries to others caused by its acts when such acts are judicial or discretionary in their nature. To determine upon what plan a sewer shall be constructed or replaced is a legislative function of the city council and for error in such plan resulting in only incidental injury the city is not liable. *Tate* v. *City of St. Paul,* 56 Minn. 527; *Detroit* v. *Beckman,* 34 Mich. 125.

Actual negligence or want of ordinary care and prudence on the part of the city must be shown to constitute negligence or entitle plaintiff to recover. The evidence shows that immediately after the first break occurred, November 20th, 1892, and before the water commenced to dam up in the sewer, and from that time on, the city pursued with vigor every possible remedy for the mischief.

Ordinary diligence and care at least were used and nothing more was required of the city. Its duty is the use of ordinary care and diligence. *Moore* v. *City of Minneapolis,* 19 Minn. 300; *Taylor* v. *City of Austin,* 32 Minn. 247; *Callender* v. *Marsh,* 1 Pick. 417; *Smith* v. *Washington,* 20 How. 135; *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Lee* v. *City of Minneapolis,* 22 Minn. 13.

It was competent for the city to show that it was beyond its

power to obligate itself to pay for a more expensive sewer than its funds on hand and one third of the tax levy for that purpose would warrant. The city was not obligated to violate its charter by putting in a more expensive sewer than its funds would permit.

The charge to the jury that more than ordinary care was required on the part of the city, that such care must be extraordinary, is beyond any requirement and is not sanctioned by any court or authority.

*II. Steenerson,* for respondent.

If defendant would claim as a defense to this action that it did not own the outlet of its sewer, that it had built it on the private property of the railroad company and could not protect it from being crushed, or repair it without the permission of the railroad company, it should at least have pleaded these facts in its answer.

Under the state of the pleadings, it must be presumed that the defendant had already acquired this right. It was negligence not to have it. But even if it had been pleaded as a defense that the outlet of the defendant's sewer was placed upon private property where it could not go to repair it, this would have been no defence. *Fort Wayne* v. *Coombs,* 107 Ind. 75; *Cummins* v. *Seymour,* 79 Ind. 491; *Sewell* v. *City of Cohoes,* 75 N. Y. 45; *Veeder* v. *Village of Little Falls,* 100 N. Y. 343; *Child* v. *City of Boston,* 4 Allen, 41.

The sewer having been constructed, the duty of maintaining it and keeping it in proper condition and repair was ministerial and any violation or negligent performance of this duty rendered the city liable for the damages resulting therefrom. *Lloyd* v. *Mayor,* 5 N. Y. 369; *Mayor* v. *Furze,* 3 Hill, 612; *Mills* v. *City of Brooklyn,* 32 N. Y. 489; *McCarthy* v. *City of Syracuse,* 46 N. Y. 194; *Todd* v. *City of Troy,* 61 N. Y. 506.

If the city so constructed this sewer as to place its outlet upon private property where the city could not go to repair it when it closed up, plaintiff's damages would not only be the result of negligence but of direct wrongful trespass by the city upon his property and rights. *Ashley* v. *Port Huron,* 35 Mich. 296; *Tate* v. *City of St. Paul,* 56 Minn. 527; *Spangler* v. *San Francisco,* 84 Cal. 12.

It was no defense to this action that the city had no funds with

which to pay for the work of reconstructing the broken sewer. *Shartle* v. *City of Minneapolis*, 17 Minn. 308; *Day* v. *Crossman*, 1 Hun, 570.

That part of the court's charge qualifying the seventh request of the defendant, must relate to the absolute duty of the city to keep its sewer open, and not permit the sewage to be forced upon the private property of others. In view of the general charge and of the other requests of the defendant given to the jury, the language of the court here referred to, even if erroneous when taken by itself, was harmless.

CANTY, J. The plaintiff's property abuts on a street in the city of Crookston. In the middle of this street runs the main sewer of the city. The street extends east and west, and terminates 110 feet west of plaintiff's premises, at a railroad embankment 17 or 18 feet high, on which were six railroad tracks, running north and south. The embankment was 60 feet wide at the top, and 120 feet wide at its base. The sewer extended across under this embankment, and to the west of the same more than 100 feet further, to the Red Lake river, and there emptied. Opposite plaintiff's premises the sewer was about sixteen feet below the surface, and under the railroad embankment it was thirty three feet below the top of that embankment. About November 20, 1892, the part of the sewer under the railroad embankment was crushed by the sinking of the embankment, which had lately been raised and widened. Underlying the surface of the ground at this point was a bed of quicksand, filled with water. The weight of the embankment caused it to sink, and push this bed of quicksand off towards the river, and it continued to sink and slide towards the river until the time of the trial. About November 25, 1892, the part of the sewer under the embankment had sunk about six feet, causing the sewer to become stopped up at the break; and the water in the sewer was set back, and much of it flowed up through the sewer connection into the basement of the building on plaintiff's premises, and some of it came in through the soft ground. The city then dug a shaft at the broken end of the sewer, and a ditch across the top of the embankment, and constructed a siphon of two-inch gas pipe to convey the water across the railroad embankment, and into the river. The siphon was put

in operation about December 2d, but it was not sufficient to carry off all the sewer water; and a steam pump was put in, which was set to work about December 8th or 9th. After some consideration by the city authorities as to what was to be done to remedy the break in the sewer, a temporary wooden sewer was put in across under the embankment, and completed March 15, 1893. About June 15th following, this wooden sewer broke, and plaintiff's premises were again flooded. The steam pump was again put into operation, while a new wooden sewer was being put in, which was completed November 16, 1893. These repeated breaks in the sewer were caused by the continuous sinking of the embankment, which at the time of the trial had forced the part broken off from the old sewer down 11 feet below its original position. The plaintiff's premises were flooded several times by reason of these breaks, and the consequent stopping up of the sewer, and he sues for damages caused by reason thereof. On the trial he had a verdict, and, from an order denying the motion of defendant for a new trial, it appeals.

There is no claim that the sewer was not originally properly constructed, but the action is brought on the ground that defendant wrongfully failed to repair it promptly, before any damage was done, and to keep it in repair, but permitted it to remain out of repair until the commencement of the action.

1. Several of the assignments of error relate to the refusal of the court to permit defendant to prove that it had no right to enter upon the railroad's right of way to repair the sewer, and that a part of the delay was caused by its having to apply to the railroad company for permission to repair the sewer, and obtain such permission. The trial court did not err in rejecting the evidence. The city having undertaken to build the sewer, it was its duty to secure a proper outlet for it. If it failed in this duty, by failing to acquire the right to repair the sewer after it was built, it cannot be heard to urge this as a defense. *City of Ft. Wayne* v. *Coombs*, 107 Ind. 75, (7 N. E. 743.)

2. The defendant also assigns as error the refusal of the court to permit it to prove that the city did not have the funds necessary to repair the sewer, and was in such financial condition that its charter prohibited it from making any contract incurring a liability for repairing the sewer. It is not necessary to consider what effect

these facts would have on its liability for damages for failure to repair. No such defense is pleaded by defendant. If it is a defense, it should be set up as such in the answer. *Shartle* v. *City of Minneapolis*, 17 Minn. 308 (Gil. 284); 15 Am. & Eng. Enc. Law, 1164.

3. The refusal of the defendant's seventh request to charge, and the giving of the following portion of the charge in connection with such refusal, is assigned as error: The Judge said to the jury:

"I shall read the defendants seventh request to you, but shall not give it. 'The city is only required to use ordinary diligence in keeping its sewers in repair.' This is refused. The sewers being under the exclusive control of the city, the city is bound to be more than ordinarily careful to keep them in repair, and to drain the property of the plaintiff, and all others depending on it. If ordinary care was only required in taking care of the sewer, the damage that might occur to the people of the city would be sometimes unreasonable. And by reason, as I said, that, the city having exclusive control,—no one being permitted to take charge of the sewer,—the city and its officers are bound to be more than reasonably careful; such care should be extraordinary care."

In answer to this, it is urged by respondent that it is immaterial whether this part of the charge is correct or not; that it is more favorable to defendant than it should be; that defendant is liable, whether it was negligent or not, that the act of collecting the sewer water, and casting it upon plaintiff's premises, is a positive trespass, for which it is liable without regard to the question of negligence. In support of this position, counsel cites *Ashley* v. *Port Huron,* 35 Mich. 295, and *Tate* v. *City of St. Paul,* 56 Minn. 527, (58 N. W. 158.) It seems to us that much loose *dicta* has grown out of attempts to approve and apply the doctrine advanced in *Ashley* v. *Port Huron.* In that case the legislative body of the city provided for cutting a sewer in the making of some other improvement, and made no provision for taking care of the water running in the sewer. The direct and necessary consequence was the flooding of the plaintiff's premises. The act of cutting the sewer was clearly a trespass. It was even, in effect, a willful trespass, because the law presumes that every man intends the necessary consequences of his own act. Of the same character are cases where a city, by artificial means,

collects surface water in large quantities on its streets, and, instead of conducting them into some proper natural drain, so makes its improvements that the water will necessarily be cast on the property of some private owner. The act is a trespass. If it is named negligence, it is negligence *per se*, and the result is the same.

But where the improvement is itself lawful, and the flooding of private property is not the necessary consequence of that improvement, but of some careless act or omission in erecting, managing, or maintaining the same, the municipal corporation should be held only to ordinary care, and not to a high degree of care, or as an insurer.

The case of *Tate* v. *City of St. Paul*, 56 Minn. 527, fully recognizes this doctrine, but it may be a question whether it had any application to that case. The principle on which that case was really decided is that, even though the defect in the sewer is of legislative origin, yet where it is clearly demonstrated by experience, after sufficient trial, that the sewer is, under ordinary conditions, insufficient for its purpose, the city is liable for maintaining it; that while it is not liable for the original error, which was legislative, it is liable for persisting in that error after sufficient trial and experience, which is ministerial.

In that case, as in this, there was flooding of the plaintiff's premises by reason of the setting back of the water through the sewer connection between the private premises and the main sewer. Is an action of trespass (strictly so called, under the Code practice) the proper remedy in any such a case? The private owner is using in common with the city, an appliance to drain his premises. Suppose two adjoining owners erect a common drain connected with the premises of each; by reason of the negligence of one, the water from his premises is set back on the premises of the other, through such connections. Is it a positive trespass, or is the only remedy an action for negligence? The private owner connects his premises with the water main in the street, and is supplied with city water. Through the negligence of the servants of the city in charge of the waterworks, an extraordinary pressure is exerted, which bursts his water pipes and floods his premises. Will trespass lie? If not, why will it lie where, by reason of the city's negligence, his premises are flooded through the sewer connections

instead of the water-pipe connections? It was error to charge the jury that defendant was bound to use extraordinary care, and for this the order appealed from must be reversed.

4. It seems to us that under the evidence it would have been proper for the court to instruct the jury that it was for them to determine whether plaintiff was guilty of contributory negligence, in failing to provide his sewer connections with proper valves to prevent the water in the sewer from flowing back, through such connection, into his premises. But no proper request was made for such instruction. The request made and refused required the jury to find that plaintiff was guilty of contributory negligence, in failing to provide such valves to prevent the water in the river from flowing up through the sewer and sewer connection into his premises at times of high water.

This disposes of all the questions worthy of consideration, and which are likely to arise on a second trial. The order appealed from should be reversed. So ordered.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 61 N. W. 21.)