## DOTTIE M. POWER v. VILLAGE OF HIBBING.
## ITASCA BAZAAR COMPANY v. SAME DEFENDANT.[1]

December 12, 1930.

Nos. 28,124, 28,125.

Gannon, Strizich & Kleffman, for appellants.
M. J. Mulvahill, for respondent.

OLSEN, J.

These are appeals by Dottie M. Power and Itasca Bazaar Company from orders denying their motions for new trials.

One action was brought by Dottie M. Power as the owner of the real estate, consisting of four lots and a business building thereon in the village of Hibbing, and the other by the Itasca Bazaar Company, the tenant of the building. In each case damages are sought to be recovered because of water and sewage backing up in the sewer in the alley in the rear of the premises and flowing back through the connecting pipes and entering and flooding the basement of the building.

The court at the close of the evidence directed verdicts in defendant's favor. Motions for new trials were made and denied. The questions presented are whether the court erred in directing the verdicts or in denying the motions for new trials. No errors occurring at the trial in other respects are claimed. The two cases were tried together. Mrs. Power owns the Bazaar company, and the two suits may be considered as one case.

Plaintiff seeks recovery on several grounds: (1) That defendant was negligent in maintaining for a number of years the sewer in question in the condition in which it was; (2) that the flooding in question was a trespass; (3) that the maintenance of the sewer in the condition in which it was constituted or resulted in a nuisance.

Negligence in the plan or construction of the sewer is not alleged. The claim is that the village was negligent in permitting

roof water from a number of buildings to continue to be drained into the sewer, originally constructed as a sanitary sewer, and that thereby the capacity of the sewer was overtaxed so that the water and sewage therein backed up into the basement of plaintiff's business building and caused damage. Plaintiff's building was constructed in 1921. A storm sewer was located in front of the building and a sanitary sewer in the alley in the rear thereof. The sewer system was constructed in 1914 to 1918. It was a dual system for storm or surface water sewers and separate sanitary sewers to carry the sewage from dwellings and business buildings. The basement floor in plaintiff's building was about 18 inches above the sanitary sewer. Toilets were placed on the basement floor, and there were also drainage outlets at other places in the floor. These toilets and drainage outlets were connected with the sewer by pipes coming in under the basement floor. In the pipe leading from the floor drains a check valve was placed, which in the opinion of plaintiff's engineer was sufficient to prevent back-water from the sewer from coming into the basement through the floor drains. No such valve was placed in the pipe leading from the toilets. As to whether such a check valve in that pipe would be practical or efficient, the testimony of the engineers is somewhat in conflict. As originally constructed the sanitary sewer past plaintiff's premises was 8 inches in diameter. Further down stream it increased to 12, then to 15, and finally to 18 inches. The proprietors of some 47 buildings above plaintiff's premises and of 27 below that point drained the roof water from their buildings, together with the sewage from inside the buildings, into this sewer. Some flooding of plaintiff's basement occurred in 1923 and prior thereto. She presented to the village a claim for damages for floodings in 1923, and a settlement was made therefor by the village in February, 1925, and for all damages prior to such settlement. There was no flooding causing any damage in 1924. Plaintiff made no further claim or complaint until after the rainstorm on June 9, 1929, hereinafter described.

In 1923 the village passed a general ordinance prohibiting the drainage of roof water into sanitary sewers. The ordinance is not

in the record, and it does not appear that it required roof water drains already connected to be disconnected from such sewers.

Early in 1924 the village enlarged the sewer past plaintiff's premises to a 12-inch sewer. Defendant's engineer testified that the sewer as so enlarged had a capacity of 83,000 gallons of flow per hour, and that the roof water and sewage coming into it, with a maximum rainfall of 1.4 inches per hour, would amount to 49,260 gallons per hour. The records since 1914 showed the highest rainfall in the locality as being 1.72 inches in one day. A greater rainfall than 1.4 inches in one hour was not known or anticipated. Plaintiff's engineer-witness conceded that the sewer had sufficient capacity to carry the roof water and sewage past plaintiff's premises under ordinary conditions of rainfall unless there were obstructions below that point or excessive amounts of water coming in below so as to cause the water to back up. There were several laterals, most of them short, and most of them coming in where the sewer was 15 and 18 inches in size. Near the outlet was a vertical drop of 10½ feet. No obstruction in the sewer was shown, and the amount of water coming in from the laterals, or the effect thereof, is not shown.

There are general statements in the evidence that plaintiff's basement, and the basements of others were to some extent flooded by water, claimed to have come from this sewer, prior to 1929. The dates and circumstances thereof are not shown. As the case stood at the close of the evidence, plaintiff, if entitled to recover, was limited to recovery for damages caused by the flooding of June 9, 1929. The rainfall on that day was an extraordinary occurrence and such a one as the defendant village could not reasonably anticipate or be required to guard against. There was a rainfall of 3.05 inches in 45 minutes, and a total of 5.12 inches in less than four hours. It might well be referred to as a cloud-burst. It washed out bridges and roadways, flooded streets and property generally, and caused great damage. It overtaxed this sewer and caused water to back through the toilets in plaintiff's basement so as to cover the basement floor to a depth of from five to seven inches.

70

Plaintiff invokes the rule of res ipsa loquitur, and cites Gould v. Winona Gas Co. 100 Minn. 258, 111 N. W. 254, 10 L.R.A.(N.S.) 889. The rule there applied is the well known rule that where an instrumentality or agency fails to work under proper working conditions such failure is evidence of the insufficiency or defective condition of the instrumentality or agency. The rule has no application where such failure is caused by some extraordinary occurrence which could not reasonably be anticipated or guarded against and which the instrumentality or agency was not designed or intended to meet or care for. The Gould case recognizes the limitations of the rule by pointing out that there was in that case no extraordinary occurrence or act of God and that reasonable care in such matters has reference to the known and varying climatic conditions.

The evidence before us was insufficient to justify any recovery on the ground of negligence on the part of the defendant in maintaining this sewer.

■ Could the plaintiff under the evidence in this case recover on the ground of trespass or of nuisance? We think not. Negligence is not necessarily one of the material elements of trespass or nuisance. Trespass is often used as the equivalent of tort or wrong. 26 R. C. L. 930. It was apparently so used in this case to characterize the resulting consequence of the alleged negligence of the defendant in maintaining this sewer. Defendant's liability here was no greater than would have been that of a private individual in the same situation. Assuming that an adjoining landowner had constructed a drain on his own land past plaintiff's premises, and that this drain was properly constructed and of sufficient capacity to carry all water that would come into it from any maximum rainfall ever known or reasonably to be anticipated, and a cloud-burst like that of June 9 came and overflowed the drain and thereby inundated plaintiff's premises, calling the resulting inundation a trespass or nuisance would not impose liability on the owner of the adjacent property. The care required of municipalities in the construction and maintenance of sewers is ordinary or reasonable care and diligence, and the municipality is not liable for injury caused by extraordinary occurrences which could not reasonably be anticipated.

City of Boulder v. Fowler, 11 Colo. 396, 18 P. 337; Gelford v. City of Hartford, 85 Conn. 689, 84 A. 85; City of Savannah v. Spears, 66 Ga. 304; City of Fort Wayne v. Coombs, 107 Ind. 75, 7 N. E. 743, 57 Am. R. 82; Wendt v. Town of Akron, 161 Iowa, 338, 142 N. W. 1024; Brose v. City of Dubuque, 193 Iowa, 763, 187 N. W. 857; Hanrahan v. Baltimore City, 114 Md. 517, 80 A. 312; Merrifield v. City of Worcester, 110 Mass. 216, 14 Am. R. 592; Prime v. City of Yonkers, 192 N. Y. 105, 84 N. E. 571; Schumacher v. City of New York, 166 N. Y. 103, 59 N. E. 773; Brinkley & Lassiter v. Norfolk Southern R. Co. 168 N. C. 428, 84 S. E. 700; Nashville v. Sutherland & Co. 94 Tenn. 356, 29 S. W. 228; City of Richmond v. Cheatwood, 130 Va. 76, 107 S. E. 830; Biegel v. City of New Orleans, 143 La. 1077, 79 So. 867.

The case of Netzer v. Crookston City, 59 Minn. 244, 61 N. W. 21, sufficiently points out that where the improvement is lawful and the flooding is caused by some careless act or omission in maintaining same, the municipality is required only to exercise ordinary care, and that the rule applies whether the action be considered as one for trespass or for negligence. The case of Tate v. City of St. Paul, 56 Minn. 527, 58 N. W. 158, 45 A. S. R. 501, is held not in conflict with that rule. The general rule is stated in 43 C. J. pp. 1136, 1137, as follows:

"There is no municipal liability for insufficiency of sewers or drains to carry off surplus water from an unprecedented or extraordinary storm or flood, unless the statute makes the municipality liable as insurer, especially where such drains or sewers are amply sufficient to meet all demands upon them under ordinary conditions."

We need not here take space to cite the cases from some 20 states in support of the text, found in notes 10 and 12 on the pages cited. It may be noted that in a Canadian case cited a rainfall at the rate of three inches per hour continuing for nine minutes was held one which could not reasonably be expected and for which the city was not obliged to provide.

If there was in our present case no liability of the village for damages on account of the extraordinary rainfall which caused

72

the damage plaintiff seeks to recover, then we cannot see how any recovery could be had on the theory of trespass or nuisance.

In the well considered case of Uggla v. Brokaw, 117 App. Div. 586, 102 N. Y. S. 857, 867, it is stated that, while courts have often held that it is unnecessary to prove negligence where an action is brought for a nuisance, that rule only applies when the nuisance is the result of an unauthorized or unlawful and wrongful act. Judge Scott in his concurring opinion states [117 App. Div. 598]:

"A skylight upon the roof of a building is not per se unreasonable, unlawful, or unwarrantable, and it cannot, therefore, be considered a nuisance, * * * unless there be proof of negligence either in its construction or maintenance," citing Losee v. Buchanan, 51 N. Y. 476, 10 Am. R. 623, and Cosulich v. Standard Oil Co. 122 N. Y. 118, 25 N. E. 259, 19 A. S. R. 475.

The same statement may be made as to the sewer here in question.

Plaintiff cites numerous cases involving negligence, trespass and nuisance, such as Tate v. City of St. Paul, 56 Minn. 527, 58 N. W. 158, 45 A. S. R. 501; Bridgeman-Russell Co. v. City of Duluth, 158 Minn. 509, 197 N. W. 971; Bohrer v. Village of Inver Grove, 166 Minn. 336, 207 N. W. 721; Batcher v. City of Staples, 120 Minn. 86, 139 N. W. 140; Hughes v. Village of Nashwauk, 177 Minn. 547, 225 N. W. 898, and others. In none of the cases was there any extraordinary occurrence such as could not be reasonably anticipated or guarded against. There was either negligence or some direct invasion of the complainant's property, or both, or the storing up of water or other substances by the defendant in such a situation that if it escaped it was bound to invade complainant's premises and cause damage; in other words, a dangerous situation.

There was no error in directing verdicts or in denying the motions for new trials.

Orders affirmed.