## ALFRED HANSON v. CITY OF MONTEVIDEO.[1]

June 16, 1933.

No. 29,308.

*Daly & Barnard* and *Kief & Kief,* for appellant.
*W. W. Merrill* and *G. P. Smith,* for respondent.

*HILTON, Justice.*

Plaintiff had a verdict for $400 in an action to recover for damage sustained because of the flooding with water of his building and injury to his goods and property therein contained. A motion for judgment notwithstanding the verdict was granted, and from that judgment plaintiff appeals.

The business part of the city of Montevideo is located in the valley of the Chippewa river along the foot of a bluff. That river flows from the north and joins the Minnesota river just south of the city. First street, which is the main business street, extends northerly

[1] Reported in 249 N. W. 46.

and southerly, with buildings on both sides; on its east side the buildings abut upon the rise of a bluff. Third street is east of, parallel to, and 147.8 feet up the bluff from First street. Canyon avenue runs east from First street and at right angles to and across Third street, ascending therefrom eastward until it reaches the level portion at the top of the bluff. Beyond Third street it was improved and traveled. Plaintiff's lot extends from First street to Third street on the south side of Canyon avenue. At the point here involved there is a difference in elevation between First and Third streets of approximately 23 feet. Surface water from 12 acres finds its way down to the intersection of Third street and Canyon avenue.

In 1919 plaintiff built a two-story brick building 25 feet by 62 feet on the westerly portion of his lot, facing First street; the ground floor and six feet to the rear thereof is on a level with First street. From the level space back of plaintiff's building the hillside rises about 22 feet to Third street. The easterly portion of plaintiff's lot is walled in on the south by a garage building; the north side is walled in by a retaining wall which supports the sidewalk on the south side of Canyon avenue. That sidewalk is 11 feet higher than the ground level at the back of the building. Plaintiff had constructed an eight-inch drain leading from the 6 x 25 x 11-foot depression or pit back of the building to a city sewer at the northwest intersection of Canyon avenue and First street. The drain was not protected by a grate. The evidence is in conflict as to whether this drain was clogged by debris prior to the storm hereinafter referred to. After the storm it was clogged.

For many years prior to 1925 the city maintained two elongated culverts across Third street at the intersection of Canyon avenue, one on the north side and the other on the south side thereof. These culverts outletted into surface gutters running down Canyon avenue toward First street. There were also open gutters on Third street extending south from the intersection of Third street and Canyon avenue. The situation caused trouble. It appeared that the intakes on the east side of Third street were somewhat inadequate, being easily clogged, and that during times of heavy runoff the surface water on occasions ran southwesterly over the intersection.

At such times certain of the surface waters escaped westerly down Canyon avenue, a portion southerly down the gutter back of the garage building, and a portion in the depression back of plaintiff's building. The portion of the water which escaped down Canyon avenue tended to wash debris onto First street.

In 1925, to obviate the situation, the city made certain improvements. Plans therefor were prepared by a city engineer of 30 years' experience. The improvements consisted of two new and larger surface intakes with drainage, and trash racks at the northeasterly corner of the intersection, connecting with an existing 18-inch culvert; on the west side of the intersection and continuing north on the west side of Third street a concrete curb and gutter were constructed. In this gutter the two large intakes were made, one at the northwest corner of the intersection over the 18-inch culvert, and one at the southwest corner of the intersection over the 12-inch culvert. Immediately south of the last described surface intake the concrete curb was continued a few feet to the east along the Canyon avenue sidewalk. The outlet of the two culverts was left as before, the water therefrom running into the open gutters of Canyon avenue. It is practically agreed that the culverts, intakes, and the new construction were entirely adequate. Plaintiff's expert engineer thought that a notch should have been cut in the curb at the southwest corner of the intersection so as to permit surface waters to flow down Canyon avenue if the inlet grates should be blocked. There was testimony that such suggestion was impractical. Whether such notch was advisable is not here important.

After the improvements were made, Canyon avenue, between First and Third streets, was parked, planted with grass and shrubs, and closed to traffic. The sidewalk was left as before. During 1925 and until September, 1930, the city authorities observed the workings of the improvements and found them satisfactory; no flooding occurred during that period. On September 4, 1930, the streets draining toward the intersection in question had been cleaned in preparation for the application of tarvia. On the afternoon of that day the city properly and necessarily caused a windrow of gravel to

be strung along Third street in preparation for this work. It was planned to apply the tarvia that night. A heavy rain fell in the city during the late afternoon of that day. There was a fall of 1.43 inches between 5:30 and 7:00 p. m. Most of this rainfall occurred during the first 20 or 30 minutes. It was the most intense rainfall in Montevideo since government records were kept. The local government observer and other witnesses of long residence testified that it was the heaviest rainfall in such a short time within their memory; it was one that could not be anticipated—unusual and extraordinary.

The water washed the gravel from the windrow on the street, and the runoff from the lawns tributary to the intersection brought debris consisting of grass, leaves, and sticks. The combination of trash weighted by gravel blocked the intake grates at the northeasterly corner and west side of the intersection. The result was that the surface water flowed in large quantities across the intersection, part of it going south on Third street, part of it flowing in the gutter behind the garage, and part flowing onto the rear of plaintiff's lot.

The evidence shows that an employe of the city, whose business it was to watch the drainage system during a storm, promptly did everything possible during all of the storm. It is only fair to say from the evidence that since the improvements of 1925 were made no damage occurred until the storm of September 4, 1930; that damage was due to a combination of unusual circumstances and an extraordinarily heavy rainfall; that the city exercised due care in adopting the plan and doing the work. A full statement of the facts is deemed necessary in order that the applicability of cases cited in support of our conclusions may be apparent.

The complaint in effect charged that the city was negligent in the construction of the sewers and inlets and that because of the insufficiency thereof surface water ran upon plaintiff's premises and damaged his property. The appellant states that the one and only question is: Did the city in making this change exercise reasonable care? No requests were made for instructions. In a comprehensive charge, to which no objection was made, the court stated:

272

"The case is predicated upon the charge that the city was negligent in taking care of certain of its surface water.  *  *  * The city of Montevideo cannot be held liable in this case unless the damage complained of was caused by a lack of reasonable care and skill on defendant's part.  *  *  *  The city was not an insurer or guarantor of the means adopted for carrying off the surface water."

We agree with the trial court that the evidence did not show any negligence on the part of the city. The evidence also clearly shows that the rainfall was unusual, extraordinary, and one that could not reasonably be anticipated. See generally Power v. Village of Hibbing, 182 Minn. 66, 233 N. W. 597, and cases cited; Taubert v. City of St. Paul, 68 Minn. 519, 71 N. W. 664; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6664; 43 C. J. §§ 1895, 1906.

Judgment affirmed.