# HARLAN PETTINGER AND ANOTHER v. VILLAGE OF WINNEBAGO.[1]

April 17, 1953.

No. 35,899.

[1]Reported in 58 N. W. (2d) 325.

*V. V. Lindgren* and *Lindgren & Callaghan,* for appellant.
*Seifert, Johnson & Hand,* for respondents.

DELL, JUSTICE.

Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The action was one to recover damages sustained by the plaintiffs through the flooding of their basement alleged to have been brought about by the negligent construction and maintenance of defendant's sanitary sewer system.

A verdict having been returned for the plaintiffs, which has the approval of the trial court, we necessarily state the facts as the jury would be justified in finding them in support of the verdict. Many of the facts are not in dispute. The defendant planned and laid out, and in 1940 and 1941 constructed and completed, sanitary sewer district No. 2. When completed it discharged into the main sewer by means of a lift station operated by two electrically driven pumps. The main sewer empties into the Blue Earth River.

In October 1949 plaintiff completed the construction of a basement dwelling on lot 2 of block 2 in Holley's Addition to the village. The lot is bounded on the north by Holley street, on the east by Ninth street, and on the south by a public alley. A branch of sewer district No. 2 runs east and west through the alley at the rear of plaintiffs' premises, and another branch runs east and west on Holley street in front of plaintiffs' premises. Plaintiff Harlan Pettinger, a plumber by trade, connected the basement sewage facilities to the sanitary sewer in the alley with the approval of the defendant. He did the work himself. There was a three-foot fall from the basement to the sewer in the alley.

In March 1950 the sewer backed up through the floor drains, flooding plaintiffs' basement three or four inches. Pettinger promptly notified the council. In April the basement was again flooded to a depth of two or three inches; in May there was a repetition of the flooding. He again notified the council, and Charles Woodford, its superintendent of sewers, was instructed by the council to inspect the system. He did this and cleaned out the branch line.

In February 1951 the basement was flooded to a depth of four or five inches and was flooded again in March, April, and May. On each occasion Pettinger notified the council. He told them that in his judgment the sewer was "wrong." He was advised by the council that it did not know what it could do about it. It offered to rent plaintiffs the fire truck to pump out their basement and also to pump out the manhole of the sanitary sewer line east of their premises. Finally, as suggested by the council, in an effort to remedy the situation, plaintiffs disconnected their sewer to the alley sewer line and plugged it with cement. There was then no longer any connection between the sanitary sewer in the alley and the basement dwelling. Plaintiffs then constructed a sewer from the basement to defendant's sanitary sewer in Holley street. John Olson, a plumber, did the work and made the connections. The change was completed the first week of June 1951. There was then a four-foot fall from the basement to the sewer in Holley street, a distance of 70 feet.

Plaintiffs, when they constructed their basement, installed a tile drain around the foundation of the basement. This drain was connected to the sewer in the alley. Its purpose was to drain plaintiffs' lot of the accumulation of any surplus water. When the sewer to the alley was disconnected, the tile drain was also disconnected and it was not connected to the sanitary sewer on Holley street.

During the afternoon and evening of June 23, 1951, there was a heavy rain. Sewage again backed up through the floor drains in plaintiffs' basement. When Pettinger returned from work about four o'clock in the afternoon, he disassembled the toilet bowl and plugged the toilet drain with a compression plug. He also plugged every

floor drain having any connection with defendant's sanitary sewer system. The basement was then pumped out. About 7 p. m. the family left for Blue Earth and returned about 9 p. m. Upon their return plaintiffs found the basement flooded to a depth of about three feet with sewage water. Their furniture and personal property were submerged, or partially so. The extent of their damage, as determined by the jury, is not questioned here. The force of the water and sewage backing up in the sewer had removed the compression plug in the toilet drain. Pettinger located it submerged under the water, and it was again reset with a pipe wrench. The village was notified and it sent out its fire truck which pumped from a manhole in the sanitary sewer system near plaintiffs' premises for approximately 20 hours. Other basements in sanitary sewer district No. 2 were also flooded with sewage water, some in the immediate neighborhood of plaintiffs' basement dwelling.

An inspection of two manholes in the sanitary sewer system, one at the intersection of Holley and Ninth streets and the other at the intersection of Ninth street and the alley to the rear of plaintiffs' dwelling, disclosed that water and sewage was within a foot or two of the top of the manhole. The manholes were approximately four feet in diameter. Plaintiffs' evidence abundantly proved that defendant's sanitary sewer system was heavily overtaxed with water. Defendant maintained an independent storm sewer system to take care of rains and surface water. An inspection of the storm sewer manhole approximately 20 feet west of the sanitary sewer manhole at the alley showed only about four inches of water. Victor Durkee, one of defendant's councilmen who was present at the inspection, according to testimony introduced at the trial, said:

"A.  *  *  *  it was a rotten mess.

*    *    *    *    *

"A.  *  *  *  there must be something wrong or there wouldn't be that much water in the sanitary sewer. It should be in the storm sewer."

"A. * * * that they knew that the sewage, that the sanitary sewer, that we are connected to, was faulty in many ways but he didn't know what they could do about it."

Dave Markle, the mayor, admitted at the trial: "I have had suspicions at times" that excess water had been draining into the sanitary sewer system. He also admitted that the council knew of the defect "To a limited degree possibly." Robert Hunter, a councilman for five years, admitted that he knew "that basements have backed up continually in from the sanitary sewer."

The sanitary sewer system was planned and designed by Ealy Briggs, a competent engineer. The sewer was constructed of vitrified clay pipe. The plans called for the sealing of all joints so as to make them watertight. If properly constructed, as designed, rainfall or surface water would have no effect upon the system. The storm sewers were designed and constructed to take care of rainfall and surface waters. If the joints of the sanitary sewer system were not properly sealed as designed, water that properly belonged in the storm sewers could seep into the sanitary sewer system, overtax it, and cause the sewage to back up.

W. P. A. labor was used in constructing sewer district No. 2. During its construction the village sewer superintendent, Woodford, observed that the joints were not being properly sealed. At the trial he admitted that at the time of the construction of the sewer system he said to the council, "I tried to tell them that I didn't think the joints were sealed right, in my judgment." When asked his opinion as to the cause of the large amount of water in the sanitary sewer system, he testified:

"A. Well, my opinion would be that there would be seepage in them.

*    *    *    *    *

"Q. Do you mean seepage in the joints?
"A. Yes."

He also admitted that if the joints of the sanitary sewer system were sealed tightly, as the plans called for, rainfall and surface

water would have no effect upon the system except for whatever amount would enter through the small holes in the manholes. Briggs, the engineer who designed the system, admitted the same thing. The evidence shows that this would be negligible.

Sewer district No. 2 was designed for and had a capacity of 175 gallons a minute. The two electric pumps at the lift station had a capacity of the same number of gallons per minute. There was a check valve in the main sewer above the lift station which prevented the main sewer from backing up into sewer district No. 2. If the system was properly constructed as designed, it could be kept free from obstruction and excess water when running at full capacity. The evidence showed that the discharge of the potential users of sewer district No. 2 was 27 gallons a minute.

The land near the lift station was low and swampy. After heavy rains it was submerged in water. Testimony showed that plaintiffs' basement would not drain until the water from the swampland had seeped away.

We purposely refrain from going into further detail concerning either the plaintiffs' or defendant's evidence as it would only lengthen the opinion and would produce nothing requiring the discussion of legal principles not covered by the facts already related.

The appeal presents three issues: (1) Was the sanitary sewer system inadequate, defective, and improperly maintained? (2) If so, did the defendant have sufficient notice of the condition to be afforded a reasonable opportunity to remedy the defect? (3) Were the plaintiffs guilty of contributory negligence as a matter of law barring recovery?

Plaintiffs make no claim here that the sanitary sewer system was not planned and designed by a competent engineer. The court correctly instructed the jury on that phase of the case.[2] It is plain-

[2]Where a municipality employs a competent engineer to plan and design its sewer system and relies and acts on the plan and design, it is not liable because of errors of judgment therein. Roche v. City of Minneapolis, 223 Minn. 359, 27 N. W. (2d) 295, 173 A. L. R. 1020.

tiffs' claim that the joints of the sanitary sewer were not properly sealed in accordance with the plan and design of the engineer and that as a result thereof surface water which should have gone into the storm sewers was able to seep into and overtax the sanitary sewer system, thus permitting the sewage to back up into plaintiffs' basement resulting in damage to their property.

■ The law is well settled that a municipality, while not an insurer of the safe condition of its sewers, is liable for damages resulting from its failure to exercise ordinary or reasonable care to keep them in repair and free from obstructions. Taylor v. City of Austin, 32 Minn. 247, 20 N. W. 157; Buchanan v. City of Duluth, 40 Minn. 402, 42 N. W. 204; Stoehr v. City of St. Paul, 54 Minn. 549, 56 N. W. 250; Netzer v. Crookston City, 59 Minn. 244, 61 N. W. 21; Power v. Village of Hibbing, 182 Minn. 66, 71, 233 N. W. 597, 599; 4 Dunnell, Dig. & Supp. § 6666.

■ Where a sewer as constructed is found after sufficient trial to cause a direct invasion of private property by casting upon it sewage water which would not otherwise have found its way there and the condition is likely to continue, a municipality is liable for the damages sustained after notice of the condition and a reasonable opportunity to remedy it. Tate v. City of St. Paul, 56 Minn. 527, 58 N. W. 158; Netzer v. Crookston City, 59 Minn. 244, 61 N. W. 21.

■ Taking the evidence as a whole we hold that the jury had a right to find that the sanitary sewer joints had not been properly sealed at the time of the construction of the system, that as a result of that condition water seeped into the system through the improperly sealed joints, and that this condition caused the sewage to back up into plaintiffs' basement on the numerous occasions disclosed by the evidence. Since the condition had continued over a long period of time, the jury was justified in finding that the defendant's sanitary sewer system was inadequate, defective, and negligently maintained.

4. In our opinion the evidence justified a finding that the defendant had both actual and constructive notice and knowledge of the

defective condition of its sanitary sewer system and that it possessed such knowledge for an adequate and sufficient length of time to afford it a reasonable opportunity to remedy the defect. The superintendent of sewers knew that the joints were not being properly sealed at the time of the construction, and he so advised the council. Sewage had backed up into basements on the sanitary sewer system over a long period of time, and defendant through its officials knew of that. The defendant knew that the sanitary sewer system was overtaxed and had pumped it out on occasions. Defendant's officials suspected that the system was defective. Moreover, Pettinger on several occasions gave them actual notice of the condition.

Where a municipality has actual or constructive notice of a defect in its sewers sufficiently long to enable it to remedy the condition prior to the act resulting in damage complained of, that is sufficient notice. Taylor v. City of Austin, 32 Minn. 247, 20 N. W. 157; 4 Dunnell, Dig. & Supp. § 6666. For cases dealing with the sufficiency of notice generally, see Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763; Ljungberg v. Village of North Mankato, 87 Minn. 484, 92 N. W. 401; Killeen v. City of St. Cloud, 136 Minn. 66, 161 N. W. 260; Engel v. City of Minneapolis, 138 Minn. 438, 165 N. W. 278, L. R. A. 1918B, 647; Woodring v. City of Duluth, 224 Minn. 580, 29 N. W. (2d) 484; 4 Dunnell, Dig. & Supp. § 6823.

■ Defendant claims that the plaintiffs were guilty of contributory negligence as a matter of law in (1) failing to disconnect the tile drain around the dwelling at the entrance of the basement, thus permitting surface water to enter the basement by that means; (2) making the connection which the plaintiffs' plumber made between the defendant's sewer on Holley street and the service sewer leading to plaintiffs' basement, it being defendant's claim that the backfall from the connection obstructed plaintiffs' service sewer thereby enabling sewage to enter the basement; and (3) failing to properly and sufficiently backfill sewer trenches on plaintiffs' premises which defendant claims resulted in the accumulation of surface water which entered plaintiffs' basement. These claims of

contributory negligence the court submitted to the jury. An examination of the record satisfies us that the issue of contributory negligence was properly for the jury not the court. We are also satisfied that the jury was amply justified in not finding the plaintiffs contributorily negligent.

The other points raised in appellant's brief have been carefully considered. We do not feel that they have sufficient merit to justify comment. We conclude that the order appealed from should be affirmed.

Affirmed.

[1]Reported in 58 N. W. (2d) 330.